**TXO PRODUCTION CORPORATION,
Appellant,**

v.

**Eugene PRICKETTE, Appellee.**

**No. 10–83–007–CV.**

Court of Appeals of Texas,
Waco.

May 31, 1983.

Rehearing Denied June 30, 1983.

On May 6, 1977, Appellee (lessor) executed an oil and gas lease with Enserch Exploration, Inc. (lessee) covering 68.6 acres of land in Freestone County. The evidence shows this lease was subsequently assigned by Enserch to Paragon Resources, Inc. On December 21, 1979, Paragon executed a pooling agreement which placed the 68.6 acre tract in a unitized tract of 692.734 acres called the Teague Gas Unit. The working interests in the gas unit had theretofore entered an operating agreement with Appellant on July 20, 1979, designating Appellant as the operator of the unit. The evidence shows that a gas well was completed on acreage in the pooled unit (on acreage other than the 68.6 acre tract in question) on November 29, 1979, which came into production in January, 1980. Appellee (lessor) signed a division order with Appellant (operator) on March 16, 1982, which contained a property description of the 692.734 acres included in the gas unit and which also referred to a gas purchase contract, dated October 15, 1981, between Paragon and Delhi Gas Pipeline Corporation.

Thereafter, on or about June 8, 1982, Appellant mailed its check in the sum of $19,908.64 to Appellee for royalties on gas produced in the unit from January, 1980 (the date of first production and sale in the unit); however, Appellant stopped payment on this check before Appellee could negotiate it. Later, on or about June 18, 1982, Appellant mailed another check to Appellee which was for payment of royalties on gas produced from October 15, 1981 (the date of first sale of gas from the unit by Paragon). Appellant's position is that the first royalty check to Appellee was prepared in error, since Appellee was not entitled to recover royalties from first production of gas in the unit (January, 1980), but was only entitled to recover royalties from the first sale of gas from the unit by Paragon (October 15, 1981). Appellee sued Appellant in McLennan County alleging, among other causes of action, breach of the division order.

In response to Appellant's plea of privilege, Appellee filed a controverting plea

Bobby W. Kolenvsky, Phinney, Hallman & Coke, Dallas, for appellant.

Vance Dunnam, Dunnam, Dunnam, Horner & Meyer, Waco, for appellee.

## OPINION

THOMAS, Justice.

This is an appeal from an order overruling Appellant's plea of privilege to be sued in Dallas County.

alleging venue was proper in McLennan County under Subdivisions 5, 7, 9 and 23 of V.A.C.S. art. 1995. After a hearing, the trial court overruled Appellant's plea of privilege without designating the particular subdivision of art. 1995 under which the court found venue proper in McLennan County.

Appellant appeals on four points, separately alleging the trial court erred in holding venue is sustainable in McLennan County under any of the four subdivisions of art. 1995 relied on by Appellee. Appellant's second point of error, which asserts that venue is not sustainable in McLennan County under Subdivision 23 because Appellee failed to prove a cause of action against Appellant by a preponderance of the evidence, will be dealt with at the outset.

Subdivision 23 provides for venue in suits against private corporations "in the county in which the cause of action or part thereof arose". The law is well settled that a "cause of action" consists of the factual propositions which establish the plaintiff's primary right of recovery (in other words, the defendant's duty) and the defendant's act or omission which violates such right. The plaintiff must prove by a preponderance of the evidence all elements of a cause of action against the corporate defendant whose plea of privilege is being contested, which must be the same cause of action alleged and relied upon in the petition and controverting plea, and, in addition, plaintiff must show that part of the transaction creating the primary right or part of the transaction involving the breach, or both, occurred in the county of suit. 1 R. McDonald, Texas Civil Practice § 4.30.2 (1981) and cases cited thereunder.

Appellee's right as a royalty owner had its inception in the 1977 oil and gas lease, which contained a standard ⅛th gas royalty clause and a standard pooling provision. The pooling agreement creating the gas unit and the operating agreement designating Appellant as operator of the unit do not purport to change Appellee's rights as a royalty owner under his lease, and Appellant does not contend otherwise.

Passing for the moment the question of whether the division order signed by Appellee on March 16, 1982, altered Appellee's rights as a royalty owner under his oil and gas lease, we shall initially examine the extent of Appellee's rights under his lease.

According to the pooling provision of Appellee's lease, production from any part of the pool unit "shall be considered ... as production ... of gas on land covered by this lease". Furthermore, the pooling provision provides that, for the purpose of computing royalties, the production of gas from the pooled unit shall first be prorated among the various tracts of land covered by the leases contributed to the unit, and "royalties ... shall be computed on the portion of such production ... so allocated to the land [68.6 acres] covered by this lease and included in the unit just as though such production were from such land".

The clear and unambiguous language of Appellee's lease makes production and sale of gas in the unit legally equivalent to production and sale of gas from the 68.6 acres covered by Appellee's lease. Since the uncontroverted evidence shows that the first production and sale of gas in the unit occurred in January, 1980, which is legally equivalent to first production and sale from the 68.6 acres covered by Appellee's lease, we hold that Appellee's gas royalties began to accrue under the terms and provisions of his oil and gas lease from January, 1980, and Appellee is entitled to receive payment retroactive to such date unless he has legally relinquished his right to such payment.

We reject Appellant's contention made during oral argument that, notwithstanding the legal effect of the division order which we shall discuss later, Appellee was not legally entitled under his lease to receive payment of royalties from the date of first production and sale of gas in the unit and is entitled to royalties only from the date Appellee's lessee, Paragon, first sold its share of gas production from the unit. We note that Appellant cited no authority on point to support such a contention.

■ We turn now to the legal effect of the division order on Appellee's rights as a royalty owner. The division order, which describes the 692.734 acres in the gas unit, does not purport to change Appellee's rights as royalty owner under his oil and gas lease, and, in fact, the division order provides it is "effective 1st sales" from the unit. Appellant, however, contends Appellee is not entitled to receive payment of gas royalties from the date of first production and sale of gas in the unit because of the language in the division order which provides that the purchase and sale of gas shall be "subject to and controlled by that certain gas purchase contract between Delhi Gas Pipeline Corporation, as buyer, and ... Paragon Resources, Inc., as seller, dated ... 10–15–81 ...." The gas purchase contract between Paragon and Delhi was not introduced into evidence in the trial court, and, therefore, not being before us, we will not speculate as to its effect on Appellee's legal rights as a royalty owner under his oil and gas lease. Appellee's oil and gas lease gave him the legal right to recover royalties from the date of first production and sale in the gas unit, and whether Appellee has waived or relinquished his rights to the payment of accrued royalties by virtue of the execution of the division order, which is made subject to the gas purchase contract between Paragon and Delhi, is an affirmative defense to be plead and proved, if possible, by Appellant. Appellee is not required to anticipate or defeat affirmative defenses in the venue proceeding. *Hanover Ins. Co. v. Richardson,* 529 S.W.2d 608 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ dism'd).

■ Appellant's second point of error claims Appellee failed to prove all the elements of a cause of action against Appellant by a preponderance of the evidence, and, therefore, the question of whether the cause of action or part thereof arose in McLennan County is never reached. We find that Appellee proved the following by a preponderance of the evidence: (1) he was the owner of an ⅛th gas royalty under a valid and subsisting oil and gas lease covering 68.6 acres; (2) the leased acreage was pooled into a 692.734 acre unit pursuant to the pooling provisions of the lease; and (3) the gas well was completed on acreage in the pooled unit and first production and sale of gas from such well began in January, 1980.

■ Under the division order executed by Appellee on March 16, 1982, it was agreed that, "effective 1st sales", Appellant would "give credit as set forth herein for all proceeds derived from the sale of gas ... from wells located on said lands [692.734 acres] ...". Further, Appellant agrees that payments under the division order shall be by check mailed to Appellee "within forty-five (45) days after the close of the month in which such sales [of gas] occur ...". This division order, under which Appellant agreed to disburse to Appellee his proportionate share of proceeds derived from the sale of gas from the unit within 45 days after the close of the month in which the sale of gas occurs, was a revocable contract. *Chicago Corporation v. Wall,* 156 Tex. 217, 293 S.W.2d 844 (Tex.1956). As Appellee is entitled to receive royalty payments from January, 1980, and since the evidence is undisputed that more than 45 days has elapsed since the close of the month in which gas was first sold in the unit, we hold that Appellee has proved by a preponderance of the evidence that Appellant has breached its legal obligation to disburse royalty payments as agreed to in the division order. This proof, along with proof by a preponderance of the evidence of the other elements of Appellee's cause of action listed above, establishes Appellee's primary right of recovery against Appellant and the act or omission on Appellant's part which violates Appellee's primary right.

■ Finally, the evidence is uncontroverted that the division order was signed by Appellee in McLennan County. In our view, the mailing of the division order by Appellant to Appellee in McLennan County for execution constituted an effective and valid offer by Appellant, and Appellee's execution of such division order was an effective acceptance of the terms of the division order, such acceptance by Appellee in

McLennan County being effective to the extent that the contract was finally "made" in the county where this suit for its breach is filed. *B & B Developers v. Ego Resources Corp.*, 613 S.W.2d 797 (Tex.Civ.App.—Waco 1981, no writ); *Lone Star Gas Co. v. Coastal States Gas Producing Co.*, 388 S.W.2d 251 (Tex.Civ.App.-Corpus Christi 1965, no writ). Under Subdivision 23, a suit against a corporation for a breach of contract may be maintained in the county where the contract was made. *B & B Developers v. Ego Resources Corp., supra.*

Accordingly, we overrule Appellant's second point of error and, finding that venue is proper in McLennan County under one exception to art. 1995, V.A.C.S., we overrule all other points of Appellant and affirm the judgment of the trial court.