## PHILLIPS PETROLEUM CO. v. WILLIAMS et al.

### No. 11511.

Circuit Court of Appeals, Fifth Circuit.

Dec. 27, 1946.

Rehearing Denied Feb. 11, 1947.

724

SIBLEY, Circuit Judge, dissenting in part.

——◆——

Warren M. Sparks and E. H. Foster, both of Amarillo, Tex., and Rayburn L. Foster, R. B. F. Hummer, and Don Emery, all of Bartlesville, Okl., for appellant.

E. Byron Singleton and D. H. Culton, both of Amarillo, Tex., for appellees.

Before SIBLEY, HUTCHESON, and WALLER, Circuit Judges.

HUTCHESON, Circuit Judge.

Brought for an accounting as to, and recovery of, royalties due plaintiffs as lessors under the gas royalties provision[1] of an oil and gas lease,[2] this is another of the growing number of suits against Phillips Petroleum Company[3] arising out of controversies as to amounts due as royalties for gas taken under leases in the Panhandle Texas field.

The claim primarily put forward by plaintiff was: that, within the meaning of

---

[1] "2nd. To pay lessor one-eighth of the gross proceeds each year, payable quarterly, for the gas from each well where gas only is found, while the same is being used off the premises, and if used in the manufacture of gasoline, a royalty of one-eighth, payable monthly at the prevailing market rate for gas; * * *."

[2] Making specific provisions for royalties on oil and on gas produced from gas wells and from oil wells, the royalty section of the lease provided:

"In consideration of the premises the said lessee covenants and agrees.

"1st. To deliver to the credit of lessor, free of cost, in the pipeline to which lessee may connect wells on said land, the equal one-eighth part of all oil produced and saved from the leased premises."

2nd. (See note 1 above.)

"3rd. To pay lessor for gas produced from any oil well and used off the premises or in the manufacture of gasoline or any other product a royalty of one-eighth of the proceeds, at the mouth of the well, payable monthly at the prevailing market rate."

[3] Phillips Petroleum Co. v. Record, 5 Cir., 146 F.2d 485; Phillips Petroleum Co. v. Ochsner, 5 Cir., 146 F.2d 138; Phillips Petroleum Co. v. Bynum, 5 Cir., 155 F.2d 196; Phillips Petroleum Co. v. Johnson, 5 Cir., 155 F.2d 185.

the royalties provision, the gas was "used off the premises," it was not "used in the manufacture of gasoline;" that the royalty due, therefore, was "one-eighth of the gross proceeds" and not "one-eighth * * * at the prevailing market rate for gas;" and that the defendant owed plaintiffs a duty to account to them fully and to pay them one-eighth of the gross proceeds of the gas taken under lease from plaintiffs.

There was an alternative claim that if the gas taken should be regarded as "used in the manufacture of gasoline" and the royalty payment of "one-eighth of the prevailing market rate" as applicable, plaintiffs were entitled to recover the fair and reasonable value, which they alleged was 6¢ per m.c.f., since, as plaintiffs alleged, during the period in question there had been no prevailing market price.

The defendant, alleging that none of the gas was sold at the mouth of the wells or used off the premises, but all of it was used "in the manufacture of gasoline" within the meaning of the royalty covenant in the lease, moved to dismiss the claim for an accounting and recovery on the basis of the gross proceeds of the gas. That motion was denied, and defendant by answer asserted several defenses: (1) A denial that any of the gas was used off the premises, and an affirmation that all of it was used for the manufacture of gasoline, some going directly to the gasoline plant and some being exchanged for equivalent amounts of gas which were so used; (2) a denial that during the period in question there had been no prevailing market rate for gas and that the value of the gas was 6¢ per m.c.f. or any other such sum; (3) that plaintiffs and defendant had agreed in writing that the royalty for the gas taken

should be computed upon the market value of such gas at the mouth of the well, determined in the manner set forth in the division and transfer orders, that all gas had been accounted for scrupulously in accordance with the provisions of those orders, and that there was now tendered to plaintiffs the amounts due in accordance with their provisions; (4) the statutes of limitations as to all royalties accrued more than four years prior to August 13, 1943.

Owners of fractional royalty interests under the lease intervened on the side of plaintiffs, putting forward substantially the same claims and taking substantially the same positions, and defendant replied substantially as it had done to plaintiffs' claims. Plaintiffs and intervenors filed full replications, setting out why the gross proceeds provision of the lease rather than the prevailing market rate provision applied, and those plaintiffs and intervenors, who had signed division orders alleging that they were without consideration, denied their binding force.

As to the defense of limitation, they all alleged that fraud and concealment on defendant's part had tolled the statute, while plaintiffs, whose funds had been impounded, pleaded the agreement for and the impounding as preventing the running of the statute.

A jury was demanded by and allowed defendant over the objection of plaintiffs. The appointment of a master was requested and allowed plaintiffs over objection of defendant. Defendant's theory that the prevailing market rate clause of the royalty provision was controlling was rejected, and, over its objections, the cause was extensively heard before the master and submitted on special issues [4] to the jury on plaintiffs'

---

[4] "Special Issue No. 1: What do you find from a preponderance of the evidence were the gross proceeds of the residue gas taken from the wells on the Williams ranch from April, 1934, through December, 1943?"

"Special Issue No. 2: Do you find from a preponderance of the evidence that defendant, Phillips Petroleum Company, suppressed and concealed from intervener J. F. Forbes material facts pertinent to a determination of the gross proceeds

of the gas during the period April, 1934 to May 4, 1940?"

"Special Issue No. 3: Do you find from a preponderance of the evidence that defendant, Phillips Petroleum Company, suppressed and concealed from Intervener Allen Early and S. A. Penix material facts pertinent to a determination of the gross proceeds of the gas during the period April, 1934, to April, 1940?"

"Special Issue No. 4: Do you find from a preponderance of the evidence that de-

theory that the gross proceeds clause of the royalty provision controlled. Judgment was entered for plaintiffs and intervenors on the verdict of the jury in the aggregate sum of $155,331.50, and defendant has appealed.

Appellant's main and primary contention here is that the applicable royalty provision of the lease was that obligating the defendant to pay as royalty one-eighth of the prevailing market price, and that the record having been made, the verdict returned, and the judgment entered on the entirely erroneous theory advanced by plaintiff that the applicable provision was that for payment of gross proceeds, the judgment must be reversed with directions to enter judgment for defendant or for trial anew.

Subordinate contentions urged by appellant are: (1) That the payments made by defendant directly to intervenors and into the impounded account for the benefit of plaintiffs, on the basis prescribed in the division and transfer orders, constituted full and final payment of all amounts then due; (2) that, assuming that the district court correctly construed the royalty covenant, the evidence does not support the jury's finding; (3) that the court erred in admitting the master's report as evidence for the consideration of the jury; (4) that the statute of limitations bars the claims of intervenors for gas produced more than four years prior to the filing of their interventions; and (5) that plaintiffs were not entitled to recover interest on royalties held to be due and unpaid.

Appellees do not deny that the gas in question or its equivalent received in a swap was carried to defendant's gasoline extracting plants where the gasoline was extracted from it and the residue made use of for other purposes. They insist, however: That the expression in the lease "use of gas for manufacture of gasoline" has the special and peculiar meaning, of "used only; " that this meaning limits its application to situations where the gas is used only in the manufacture of gasoline, that is where, after the gasoline is extracted, the residue is popped off or wasted into the air; and that where, as here, after the gasoline is extracted, the residue is applied to other uses, it may not be said that the gas was "used" in the manufacture of gasoline within the meaning of the clause.

■ A careful examination of the record as to what was done with the gas and of appellees' evidence and arguments in support of their theory leaves us in no doubt that there is no basis whatever for the restricted and special meaning appellees would place upon the clause in question. The gas, for the royalty on which they sue, was used for the manufacture of gasoline, the applicable royalty provision, therefore, is that for the payment of the "prevailing market rate for gas" and not that for "the payment of gross proceeds."

■ On careful consideration of a royalty clause identical in language with the clause in question here and of facts as to the use of the gas identical with those

---

fendant, Phillips Petroleum Company, concealed from interveners Roberts & Olver, Inc., and Three-B Royalty Company material facts pertinent to a determination of the gross proceeds of the gas during the period April, 1934, to May 24, 1940?"

"Special Issue No. 5: Was there a market price, as that term has been defined to you, for the gas produced from the Williams well?"

"Special Issue No. 6: If you have found that there was a market price, state what you find it to have been at the time in question."

"Special Issue No. 7: If you have found there was no market price existing at such time, then you may further answer what was the actual fair and reasonable value of the gasoline extracted from the raw natural gas?"

"Thereafter, on the 8th day of June, 1945, said jury returned into Court its verdict, which was received, accepted and filed; said verdict being duly signed by said foreman and being in terms as follows:

"We, the Jury, answer the special issues submitted in the charge, as follows:

"We answer Special Issue No. 1: $1,206,629.55.

"We answer Special Issue No. 2: Yes.

"We answer Special Issue No. 3: Yes.

"We answer Special Issue No. 4: Yes.

"We answer Special Issue No. 5: No.

"We answer Special Issue No. 6: No.

"We answer Special Issue No. 7: $243,097.58."

shown here, we so held in Phillips Petroleum Co. v. Record, 5 Cir., 146 F.2d 485. Nothing in the record in this case, nothing in appellees' arguments, causes us to withdraw or in anywise modify the views we there expressed. The evidence offered in this case and made so much of here by appellees, in support of its argument for construing the word "used" as meaning "used only," as to the practice prevailing when the lease was written, of using the gas only for extracting the gasoline and then popping the residue gas into the air, is without relevance to the issue on which it was tendered, the meaning of the lease. Certainly it may not be given the effect ascribed to it here, of reading the word "only" into the clause so that it will be held to apply to gas used for the manufacture of gasoline only if the residue is popped into the air, and not to apply to gas where, after the gasoline is extracted, the residue is directed to other uses. The fact that the residue is not wasted but a valuable use is made of it should have, and undoubtedly has had, a bearing on the prevailing market rate, or if there is none, the prevailing value of the gas used for the manufacture of gasoline since the new practice of making profitable use not only of the gasoline extracted from it, but of the residue, has been in vogue. But while the change of use and the value it has added to the gas in the lessee's hands is, as an economic fact, of great importance in fixing "the prevailing market rate," or, if there is no prevailing market, the value of the gas, and therefore, the amount to be paid lessors for it in accordance with the basis fixed in the contract, it is without effect upon the determination of what the contract means.

Since the cause was tried below on a completely erroneous theory, and because it was, the judgment must be reversed and the cause remanded for further proceedings in accordance herewith, it is unnecessary for us to consider or discuss any of the other contentions of appellant as to the errors committed on this trial, except its contentions one, four, and five, which have to do with matters which, on a retrial in accordance herewith, will have to be determined.

As to contention one, the division and transfer orders, with their definite declaration that the market value of the gas at the mouth of the well is to be the measure of lessors' rights and lessee's obligations, and their clear and full provisions for precisely arriving at the value, we agree with defendant, that, until withdrawn or modified, they constitute the precise and definite basis for payments, and payments made in accordance with them are final and binding. The very existence of this and the numerous other litigations which have arisen over the meaning and effect of market price or rate provisions and over what was the market price or value of the gas, and the fact that these agreements fix, as due, sums which may from time to time be more or less than the prevailing market price, give full support to and make binding payments and settlements made thereunder. Binding as they are, however, in respect of payments made and accepted under them, these division or transfer orders did not rewrite or supplant the lease contract. They are binding only for the time and to the extent that they have been, or are being acted on and made the basis of settlements and payments, and from the time that notice is given that settlements will not be made on the basis provided in them, they cease to be binding. As to persons who did not sign division or transfer orders, payments made to and accepted by, or settlements made with them, on the basis provided for in these orders, will be equally binding. If, however, the evidence shows not that the payments were received upon the basis provided in these agreements, but that they were received merely as payments tendered by the company and accepted by the recipients on the faith and in the belief that they were being paid the amount due them, the mere acceptance of these payments would not constitute an accord and satisfaction or a binding settlement.[5]

As to contention four, the statute of limitations, it is quite plain, we think, that, on the record before us, as to the intervenors whose funds were not impounded, the statute of limitations has been running, and there was no basis for the jury's find-

---

[5] Union Producing Co. v. Pardue, 5 Cir., 117 F.2d 225, 227.

ing that there was fraud on the part of defendant which tolled the statute.[6] On another trial, unless it is shown that something affirmative and fraudulent was done by defendant to deceive lessors or to keep them in ignorance of the fact that the amounts paid them were not being reported truly, the defense of limitation should be sustained.[7]

As to contention five, that interest may not be allowed, whatever may be said of the state of the law in Texas, and as to whether recovery of interest was properly denied in Phillips Petroleum Co. v. Johnson, 5 Cir., 155 F.2d 185, we think that on any sums which, on retrial in accordance herewith, may be found to be due on the basis of prevailing market rate, or if there is no prevailing market rate, of the value of the gas taken, interest should be allowed from the date the payment of those sums became due.

The judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

SIBLEY, Circuit Judge (dissenting in part).

I concur in the disposition of the case and in the opinion except the last paragraph. I do not think that interest will be allowable on any recovery that may be had. The Texas statutes and decisions on the question of interest on unliquidated sums due under written contracts are not plain. The court in Phillips Petroleum Co. v. Johnson, 5 Cir., 155 F.2d 185, did its best to follow them by distinguishing situations in which the sum payable could have been ascertained by the debtor with reasonable certainty from those in which a trial on evidence was fairly necessary to ascertain it. That distinction applied here would allow interest if there was a prevailing market rate for gas, for a market price is a definite and ascertainable fact. But interest should be denied if there was no certain market rate and the fair value of the gas had to be ascertained by a trial. Value is a matter of

opinion, and the value of gas in Texas, as the cases of Phillips Petroleum Co. in this court show, has hitherto been very difficult to fix.

---

[6] Hickok Producing & Development Co. v. Texas Co., 5 Cir., 128 F.2d 183; Phillips Petroleum Co. v. Johnson, 5 Cir., 155 F.2d 185; Cowden v. Limpia Royalties, Tex.Civ.App., 109 S.W.2d 992, at page 996; Glenn v. Steele, Tex.Sup., 61 S.W.2d 810; Sherman v. Sipper, 137 Tex. 85, 152 S.W.2d 319, 137 A.L.R. 263.

