THE CHICAGO CORPORATION V. MRS. IRMA WALL ET AL.

No. A-5678. Decided October 3, 1956.
Rehearing Overruled October 31, 1956.
(293 S.W. 2d Series 844)

*Small, Small & Craig* and *C. C. Small, Jr.*, all of Austin, for petitioner, the Chicago Corporation.

The Court of Civil Appeals erred in failing to hold that the unrevoked division order and the two transfer orders executed by plaintiffs were binding contracts which fixed and determined as a matter of law the proportionate interests of the respondents (plaintiffs) in gas production from Carthage Gas Unit No. 17-Wall. Buchanan v. Burnet, 119 S.W. 1141; Johnson v. Suggs, 291 S.W. 857; London Terrace v. McAllister, 142 Texas 608, 180 S.W. 2d 619.

*Turner & Bankhead* and *Tom Bankhead*, of Carthage for respondents Wall.

In reply cited Peoria Life Ins. Co. v. Poynor, 297 S.W. 788; McCullough v. Zero Plat Co., 269 S.W. 2d 830; City of Tyler v. Bruck, 267 S.W. 2d 429, n.r.e.

MR. JUSTICE SMITH delivered the opinion of the Court.

Mrs. Irma Wall, a widow, and her son, William Thomas Wall, brought this suit against The Chicago Corporation, seeking judgment for royalty on gas production from a gas unit in the Carthage Gas Field in Panola County, Texas. Mrs. Wall and her son alleged that The Chicago Corporation as operator of Carthage Gas Unit No. 17-Wall had failed and refused to properly account and pay to them royalties due them on gas produced from such Unit. The trial court's judgment for the plaintiffs, based on jury findings, was reversed and remanded by the Court of Civil Appeals. Not yet officially published.

In 1941 Mrs. Wall owned a 5/8 interest and her son, William Thomas Wall, owned a 3/8 interest in a 77.9 acre tract, a ten acre tract and a 30 acre tract of land in Panola County, Texas. These tracts of land were conveyed to M. H. Smith and Seth E. Smith in 1941, with Mrs. Wall and her son reserving ½ of their royalty interest in the oil, gas and minerals therein, with the Smiths and their assigns having the right to execute oil and

gas leases. That same year, the Smiths executed an oil and gas lease which covered the three tracts and contained appropriate pooling provisions. In 1945 the lessee in conjunction with The Chicago Corporation executed a Gas Pooling Agreement which was ratified by the various royalty owners, including the Walls. Division orders were executed and signed by all interested parties.

The division orders provided that the signers thereof were the legal owners of, and they warranted the title to their respective interests set out therein "in all gas produced and sold from, and all condensate, natural gasoline, and residue gas allocated to the Carthage Gas Unit No. 17-Wall, consisting of 656.48 acres of land, out of the Samuel Duncan Survey in Panola County, Texas, under all the terms and conditions of that certain Gas Pooling agreement dated the 1st day of September 1945, by and between The Chicago Corporation, et al, as Lessee and T. T. Wall, et al, as Royalty owners, * * * * " that "effective first production you are hereby authorized to receive, process, and sell all gas produced from and all condensate, natural gasoline, and residue gas produced from or allocated to the above described Gas Unit and to give credit for and pay over the interests of the undersigned in the proceeds, as directed below:"

The interest of Mrs. Wall as stated in the signed division order was $1/8 \times 5/8 \times \dfrac{19.29}{656.48}$ amounting to a 12.0563-acre royalty interest; that of her son was $1/8 \times 3/8 \times \dfrac{19.29}{656.48}$ or 7.2337-acre royalty interest. The Court of Civil Appeals reversed and remanded this case to the trial court for further development of the facts on the question of whether or not the 77.9-acre tract was within the Carthage Gas Unit No. 17-Wall.

Acting on the executed division order the petitioner set upon its books a decimal interest of .00229562 for Mrs. Wall and .00137737 for William Thomas Wall. All other royalty owners in the Unit signed the division order during the year 1946, accounting for 100% of the royalty interest in the Unit.

The Chicago Corporation paid royalties according to the interests stated in the division orders to the son until 1948 and to Mrs. Wall until 1950. On November 19, 1948, William Thomas Wall executed and delivered to petitioner a transfer order wherein he stated that he had transferred $1/8 \times \dfrac{7.2337}{656.48}$ in

Carthage Gas Unit No. 17-Wall to B. W. Reed. The Chicago Corporation upon receipt of such transfer stopped all royalty payments to Wall. On April 1, 1950, Mrs. Wall signed and delivered to petitioner a transfer order in favor of Simmons, which purportedly transferred a five-acre royalty interest in Carthage Gas Unit No. 17-Wall. Mrs. Wall testified and The Chicago Corporation stipulated that Mrs. Wall's royalty payments were decreased in amount after April 1950.

Both transfer orders are in the same terms. The one executed by Mrs. Wall reads:

"TO THE CHICAGO CORPORATION:

The undersigned Transferors have sold and transferred the interests shown below in all gas produced from and all condensate, natural gasoline and residue gas produced from or allocated to the Carthage Gas Unit No. 17-Wall as created and described in that certain Gas Pooling Agreement, dated the 1st day of Sept., 1945, by and between The Chicago Corporation, et al, as Lessee, and T. T. Wall et al, as Royalty Owners, said Agreement being filed for record in the Office of the County Clerk, Panola County, Texas, under County Clerk's File No. 4373.

| Interest | To Whom Transferred | Unit Rate |
|---|---|---|
| $1/8 \times \dfrac{5.00}{656.48}$ | James W. Simmons, Jr. | |

You will therefore give credit for and pay over any sums accruing to the above described interests from and after 7:00 A.M. on the 1st day of April, 1950, to the party or parties named above as their interest appears.

WITNESS:                           TRANSFERORS:
B. W. Reed /s/                     Mrs. Irma Wall /s/"

The Walls brought this suit on the theory that they owned one-half of the royalty under the ten and thirty-acre tracts of land when they signed division orders in 1945 and that, having made no conveyances out of these two tracts, they still own the same interests they did when the pooling agreement was made; but that The Chicago Corporation has not paid according to the Walls' ownership since 1948 when all payments to the son were stopped, and 1950 when all payments to Mrs. Wall were reduced. The Walls alleged that they sold royalty under a 77.9-acre tract

and signed transfer orders for the interest conveyed, and that The Chicago Corporation through mistake, error, or bad judgment, took the royalty due the Walls under the ten and thirty-acre tracts and wrongfully paid it to the grantees of the interests conveyed in the 77.9-acre tract.

The petitioner contends that the unrevoked division order and the two transfer orders executed by respondents were binding contracts which fixed and determined as a matter of law the proportionate interests of the respondents in gas production from Carthage Gas Unit No. 17-Wall.

The jury found in response to special issues submitted that the defendant in paying out the royalties in question did not rely upon the division orders and transfer orders in question; that the transfer orders signed by plaintiffs pertained to different land from that involved in the suit; that The Chicago Corporation had knowledge or had means by which with reasonable diligence it could have acquired knowledge of the fact that such transfer orders pertained to different land from the land involved in the suit; that the defendant knew or could have known by the exercise of due diligence, which it did not use, that the plaintiffs had made no conveyance of their interest in the ten and thirty-acre tracts, the subject of the suit, and that the defendant had equal knowledge with the plaintiffs of the plaintiffs' ownership of the royalty in litigation.

It is true the Walls owned one-half of the royalty in the tracts of ten and thirty acres and they were still the owners of said interests at the time of trial. But, until this suit was filed, the division orders and the transfer orders were in effect and had not been revoked by the Walls.

Respondents in this suit seek a money judgment against petitioner. Their claim is that petitioner owes them money arising out of the proceeds of the sale of gas and associated petroleum liquids produced from Carthage Gas Unit No. 17-Wall.

Petitioner's contention that the division order and the two transfer orders were binding contracts and that it paid the funds as directed by respondents must be sustained. These instruments created a contractual relationship between the petitioner and respondents. Obviously, the petitioner acted in good faith in following the instructions in the transfer orders and paying to B. W. Reed and J. W. Simmons, Jr., the respective amounts due them under the transfer orders. There is no evi-

dence of probative force to sustain the finding of the jury that The Chicago Corporation did not rely on the transfer orders. On the contrary, all the evidence shows that they relied upon such orders. Since the respondents directed the petitioner as to how to credit and pay their royalty interest by the written transfer orders, they cannot now claim that petitioner was not entitled to rely on such directions.

Petitioner paid out the funds to others upon their faith in the solemn declarations of respondents, and, until the division order and transfer orders are revoked, the petitioner has no alternative except to pay the funds to the persons named in the transfer orders. If, in fact, the division order and the subsequent transfer orders incorrectly stated respondents' ownership by failure to take into consideration the tract of 77.9 acres, the result is the same for the reason that all parties have acted on the provisions of the written transfer orders. If the tract of 77.9 acres was actually within the Unit, then the terms and provisions of the transfer orders were broad enough to include and transfer any money due the Walls from the fractional interests so transferred.

After the respondents executed the transfer orders they were no longer entitled to money they had directed the petitioner to pay to others, and they cannot recover from petitioner the sum of money sued for. To hold otherwise would be to cause the petitioner to suffer an injury as the result of a double payment of the sums claimed in this suit. See Hogg v. Magnolia Petroleum Co., Texas Com. App., 267 S.W. 482, 484. In that case, Hogg filed suit against the Magnolia Petroleum Company and others for damages for the conversion of the oil which Magnolia received, and for which it paid a Mr. Bloch after it was notified by Hogg that he claimed a lien on the interest sold by him to a Mr. Kimsey, Mr. Bloch's grantor.

The court held that the division order did not purport to transfer the royalty interest of Hogg and Kimsey to the Magnolia; that "it is not in a strict sense a conveyance of oil, even for the time therein expressed." Further in the opinion, the court said:

"By the division order the Petroleum Company obtained the right to buy and receive the oil at the price prevailing at the time the same was produced, and delivered to it by the owner of the lease. It was not interested in the person to whom payment should be made. Only the owner and lien holder of the oil at the

time same was to be received and bought by the company were so interested. By the terms of its contract the company was entitled to receive and purchase the oil, subject, however, to its obligation to pay the party known to it to be entitled to the purchase price. After Kimsey transferred his royalty interest to Bloch, he was no longer entitled to receive the purchase price of the oil as delivered, and, had the company continued to pay Kimsey for the oil after notice that he had conveyed his interest to Bloch, over Bloch's protest, we think the company would be liable on suit against it by Block for conversion."

As to the rights of Hogg, the lien holder, the court said:

"We cannot agree with the holding of the Court of Civil Appeals that 'by signing that division order Hogg put it beyond his power to recall the permission he thereby gave for the sale and purchase of the incumbered property.' " See Snider v. Snider, 208 Okla. 231, 255 Pac. 2d 273.

Since we hold that this is not a suit for title, but is a suit for an accounting and for a recovery of money claimed to be due, and, since we hold that respondents are bound by their orders of transfer until revoked, we see no necessity to remand this case to the trial court to determine the immaterial question of whether or not the tract of 77.9 acres is within Carthage Gas Unit No. 17-Wall.

The judgments of the trial court and the Court of Civil Appeals are both reversed and judgment is here rendered that the respondents take nothing as against the petitioner.

Opinion delivered October 3, 1956.

Rehearing overruled October 31, 1956.