John David GAVENDA et al,
Petitioners,

v.

STRATA ENERGY, INC. et al,
Respondents.

No. C-3894.

Supreme Court of Texas.

Jan. 22, 1986.

Rehearing Denied April 2, 1986.

Mike Hatchell, Ramey Firm, Sam B. Cobb, Jr., Sam B. Cobb, Jr. & Associates, P.C., Tyler, for petitioners.

K. Ray Campbell, Campbell, Athey & Zukowski, Maurice Bresenhan, Jr., Houston, for respondents.

SPEARS, Justice.

This oil and gas case concerns the effect of division and transfer orders. The issue is whether division and transfer orders are binding until revoked when an operator who prepares erroneous orders underpays royalty owners, retaining part of the proceeds for itself. The trial court held the orders were binding until revoked and rendered summary judgment for the operators. The court of appeals affirmed. 683 S.W.2d 859. We reverse the judgment of the court of appeals in part and remand the cause to the trial court.

In 1967, the Gavenda family conveyed land in Burleson County to the Feinsteins. The Gavendas reserved a fifteen-year one-half non-participating royalty interest:

PROVIDED, HOWEVER, the Grantors herein except from this conveyance and reserve unto themselves, their heirs and assigns, for a period of fifteen (15) years from the date of this conveyance, an undivided one-half (½) non-participating royalty of all of the oil and gas in, to and under that produced from the hereinabove described tract of land. Said interest hereby reserved is a non-participating

royalty and shall not participate in the bonuses paid for any oil and/or gas lease covering said land, nor shall the Grantors participate in the rentals which may be paid under and pursuant to the terms of any lease with reference to said land.

The Feinsteins later sold the land, subject to the Gavendas' oil and gas reservation, to Billy Blaha. In 1976, Blaha executed an oil and gas lease for a ⅛th royalty.

After various conveyances with overriding royalty interests taken, Strata Energy, Inc. and Northstar Resources, Inc. each acquired a working interest in the lease. They drilled one producing oil and gas well in July, 1979 and another in February, 1980. Strata and Northstar entered into a joint operating agreement naming Strata the lease operator and providing that Strata would disburse all royalties from production. The agreement also provided that Strata's actions were made on behalf of both Strata and Northstar.

Strata hired an attorney to perform a title examination, and he erroneously informed Strata that the Gavendas were collectively entitled to a ¹⁄₁₆th royalty, rather than the actual ½ royalty. Following the attorney's erroneous report, Strata prepared the division orders and disbursed the proceeds. When various Gavendas died and royalty ownership changed, Strata prepared and sent transfer orders to the new royalty owners reflecting the same collective ¹⁄₁₆th royalty. The Gavendas signed these division and transfer orders and received the disbursements. The Gavendas were underpaid by ⁷⁄₁₆th royalty, ⁷⁄₁₆th of gross production, and Strata and Northstar kept at least part of the underpayment.

On discovering this error, the Gavendas on September 29, 1982 revoked the division and transfer orders. Two days later, their royalty interest terminated under the express terms of their reservation. Later in 1982 the Gavendas filed suit to recoup more than 2.4 million dollars in underpaid royalties owed them under the deed reservation.

Both sides filed motions for summary judgment. The trial court and the court of appeals held for Strata and Northstar, maintaining the division orders were binding until revoked. The court of appeals, however, reversed summary judgment and remanded as to Victor Gavenda's estate. The court of appeals held that there were fact issues whether the division and transfer orders encompassed Victor Gavenda's estate.

Both parties have appealed to this court. The Gavendas bring three points of error, contending the rule that division orders are binding until revoked does not apply when there is unjust enrichment, and therefore they should be allowed to recover royalty deficiencies from Strata and Northstar.

Strata and Northstar contend the division and transfer orders were also binding on Victor Gavenda's estate. They, however, do not dispute: (1) the deed reserved a ½ royalty, or ½ of gross production; or (2) the amount of the royalty underpayment, $2,435,457.51 plus interest. The only issue then is whether under these facts division orders are binding until revoked.

Division orders provide a procedure for distributing the proceeds from the sale of oil and gas. They authorize and direct to whom and in what proportion to distribute funds from the sale of oil and gas. 4 H. Williams, Oil and Gas Law § 701 at 572 (1984). Transfer orders are later changes in the division order's distribution. *Id.*

In Texas, division and transfer orders do not convey royalty interests; they do not rewrite or supplant leases or deeds. *Exxon Corp. v. Middleton*, 613 S.W.2d 240, 250 (Tex.1981); *Phillips Petroleum Co. v. Williams*, 158 F.2d 723, 727 (5th Cir.1946). The weight of authority clearly supports this rule. Williams, *supra*, § 707 at 612.

■ The general rule in Texas, though, is that division and transfer orders bind underpaid royalty owners until revoked. *Exxon Corp. v. Middleton*, 613 S.W.2d 240, 250 (Tex.1981); *Chicago Corp. v. Wall*, 156 Tex. 217, 293 S.W.2d 844, 847 (1956). One principle underlining this rule is detrimen-

tal reliance. 4 H. Williams, *supra*, § 707 at 614; 3 A. Summers, Oil and Gas § 590 at 139–140 (1958).

Detrimental reliance explains why purchasers and operators are usually protected by the rule that division orders are binding until revoked. In the typical case, purchasers and operators following division orders pay out the correct total of proceeds owed, but err in the distribution, overpaying some royalty owners and underpaying others. If underpaid royalty owners' suits against purchasers and operators were not estopped, purchasers and operators would pay the amount of the overpayment twice—once to the overpaid royalty owner under the division order and again to the underpaid royalty owner through his suit. They would have double liability for the amount of the overpayment. *Chicago Corp. v. Wall*, 293 S.W.2d 844 (Tex.1956). Exposing purchasers and operators to double liability is unfair, because they have relied upon the division order's representations and have not personally benefited from the errors.

■ Generally, the underpaid royalty owners, however, have a remedy: they can recover from the overpaid royalty owners. *Allen v. Creighton*, 131 S.W.2d 47, 50 (Tex. Civ.App.—Beaumont 1939, writ ref'd). The basis for recovery is unjust enrichment; the overpaid royalty owner is not entitled to the royalties. *See* 4 Williams, *supra*, § 707 at 613 (1984); 3 A. Summers, *supra*, § 590 at 139–40 (1957).

In *Exxon v. Middleton*, 613 S.W.2d 240 (Tex.1981), we held the division orders were binding until revoked, even though there had been no detrimental reliance. To provide stability in the oil and gas industry, we held for the distributors of the proceeds because they had not profited from their error in preparing the division order—in short, because there was no unjust enrichment.

In *Middleton*, Sun and Exxon, the well operators, sold the gas off the premises to purchasers under long term contracts. They then prepared division orders and distributed to the royalty owners a ⅛th royalty based on the contract price. The leases, however, provided for gas sold off the premises for a ⅛th royalty based on market value at the well. The royalty owners sued for their royalty deficiencies—the difference between a ⅛th royalty based on market value at the well and a ⅛th royalty based on contract price.

Exxon and Sun could not have relied on the division orders' representations in making the long-term gas contracts, for they had executed these contracts before the royalty owners had signed the division orders. *Id.* at 249. More importantly, however, Exxon and Sun did not benefit from the discrepancy between the leases and the division orders. They paid out ⅛th of what they received from the purchaser—⅛th of the contract proceeds. Moreover, at the time of these transactions, long-term gas contracts were the best arrangement Exxon and Sun could obtain for the royalty owners.

■ When the operator, however, prepared erroneous orders and retained the benefits, we held that the division orders were not binding. *Stanolind Oil & Gas Co. v. Terrell*, 183 S.W.2d 743 (Tex.Civ. App.—Galveston 1944, writ ref'd). In *Terrell*, Stanolind Oil & Gas prepared the division orders and distributed the bonus and royalty accordingly. Stanolind Oil & Gas deducted the gross production tax from the bonus, although the lease provided that there would be no deductions. Despite the lease provision, Stanolind was shifting the gross production tax from itself to Terrell. It was profiting from its own error in drawing up the division order. There was unjust enrichment.

■ Applying the law to this case, we hold that the division and transfer orders do not bind any of the Gavendas. Strata both erroneously prepared the division and transfer orders and distributed the royalties. Because of its error, Strata underpaid the Gavenda family by ⁷⁄₁₆th royalty, retaining part of the ⁷⁄₁₆th royalty for itself. It profited, unlike the operators in *Exxon v. Middleton*, at the royalty owner's expense.

It retained for itself, unlike in *Chicago Corp. v. Wall,* part of the proceeds owed to the royalty owners. Therefore, Strata is liable to the Gavendas for whatever portion of their royalties it retained, although it is not liable to the Gavendas for any of their royalties it paid out to various overriding or other royalty owners.

■ Strata also argues that it is not responsible for the loss because the attorney who prepared the title opinions was not Strata's agent but rather an independent contractor. We cannot agree. The attorney-client relationship is an agency relationship. The attorney's acts and omissions within the scope of his or her employment are regarded as the client's acts; the attorney's negligence is attributed to the client. *Texas Employers Insurance Ass'n v. Wermske,* 162 Tex. 540, 349 S.W.2d 90, 93 (1961). We note that Strata and Northstar have filed a third party cross-action against the attorney.

■ The Gavendas also request attorney's fees under Tex.Rev.Civ.Stat.Ann. art. 2226 (Vernon Supp.1985), now codified in the Civil Practice and Remedies Code, ch. 959, § 38, 1985 Tex.Sess.Law Serv. 7123–7124 (Vernon). Attorney's fees are recoverable in suits for royalty payments owed under oil and gas leases. *Atlantic Richfield Co. v. Manges,* 702 F.2d 85, 87 (5th Cir.1983); *Gerdes v. Mustang Exploration Co.,* 666 S.W.2d 640, 645 (Tex.App.—Corpus Christi 1984, no writ). Because we see no distinction between allowing attorney's fees on underpaid royalty suits based on leases and those based on deed reservations, we hold the Gavendas can recover their attorney's fees.

We reverse the judgment of the court of appeals in part and remand the cause to the trial court to determine the amount of royalties owed by Strata and Northstar to the Gavendas, prejudgment interest due thereon, and attorney's fees. Although the total amount of the royalty deficiency is undisputed, we cannot tell from the record what portion of the royalty deficiency was retained by Strata and Northstar.