**Reversed and Remanded and Opinion Filed April 5, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-20-00642-CV

**JAMES R. SNELL, Appellant**
**V.**
**JENNIFER ELLIS, Appellee**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-00840**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Nowell
Opinion by Justice Molberg

In this TCPA[1] case, James R. Snell appeals the trial court's order dismissing

his malpractice claim against his former lawyer, Jennifer Ellis, who was appointed

to represent him in an involuntary commitment proceeding under chapter 574 of the

health and safety code. *See* TEX. HEALTH & SAFETY CODE § 574.003.

---

[1] Chapter 27 of the Texas Civil Practice and Remedies Code embodies the Texas Citizens Participation Act and is known as the TCPA. *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. The Texas Legislature amended the TCPA effective September 1, 2019. Those amendments apply to "an action filed on or after" that date. Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law Serv. 684,687. This lawsuit was filed on January 15, 2020. Thus, the current version of the law with 2019 amendments applies to this action. All citations to the TCPA are to the current version unless otherwise indicated.

This appeal raises two questions that often arise in TCPA cases—specifically, whether the TCPA movant (Ellis) satisfied her burden under section 27.005(b), and if so, whether the nonmovant (Snell) satisfied his burden under section 27.005(c).[2] For purposes of this appeal, we assume, but do not decide, that Ellis exercised her right to petition based on communications she made as Snell's attorney but conclude Ellis failed to demonstrate that Snell's legal action is based on or is in response to any such exercise as required under section 27.005(b). Because the trial court erred in granting Ellis's motion, we reverse the trial court's June 11, 2020 order and remand the case for further proceedings.

## BACKGROUND

On January 15, 2020, Snell sued Ellis, alleging legal malpractice in connection with her role as his appointed attorney in a proposed involuntary commitment proceeding under chapter 574 of the Texas Health & Safety Code. *See* TEX. HEALTH & SAFETY CODE § 574.003.

Snell, who is also a lawyer, alleges in his petition that on the morning of December 9, 2018, he became verbally active, disoriented, and confused while a pedestrian on a residential street in his neighborhood, possibly due to side effects of a prescription anti-inflammatory medication. Police were contacted, and he did not

---

[2] *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b), (c). This appeal does not raise any issues under section 27.005(d). *See id*. § 27.005(d).

resist nor respond with hostility toward them when they arrived. He had not harmed himself or others, had not threatened to do so, and was not charged with any crime.

Snell further alleges that the police called paramedics, who gave him a drug that put him to sleep. He was taken to the emergency room at Baylor Hospital (Baylor) in Dallas, and on the following day, a third party filed an application with a Dallas County probate court to have him involuntarily committed to a mental hospital. According to Snell's petition, shortly after the filing, the probate court signed an order of protective custody ordering him to be taken to Garland Behavioral Hospital (Garland). Snell alleges he was not provided a copy of the application or probate court order at the time, and on the evening of December 10, 2018, he was involuntarily transported from Baylor to Garland.

Snell alleges that on December 12, 2018, he received a notice advising him of a probable cause hearing set on December 13 and a trial setting on December 18. The notice also informed him Ellis had been appointed as his attorney for the proceedings, and it included her phone number. He called the number, left a message, and reviewed the application and attached exhibits.

According to Snell, he previously represented a mental health patient at a probable cause hearing, was generally familiar with the rights of patients in his situation, and understood the issue in the probable cause hearing to be whether he posed a likely risk of serious harm to himself or others, an issue he understood would require evidence of a recent overt act or a continuing pattern of behavior that would

–3–

tend to confirm that allegation. He alleges that because he knew no such evidence existed, he was prepared to challenge the proceeding.

Snell alleges he met with Ellis on the evening of December 12, 2018, and in their several minutes of discussion, Ellis gave him no indication she was his advocate. Snell alleges Ellis did not explain his rights or how she would defend them, and he did not feel comfortable Ellis would properly represent him at the upcoming hearing. At the conclusion of their meeting, Snell informed Ellis she was not authorized to represent him, and that he would represent himself.

Despite this, and presumably after their December 12, 2018 meeting, Ellis signed and filed a notification with the probate court concerning their meeting. According to Snell, Ellis did not disclose that Snell had terminated her as his counsel and instead falsely stated that he would not communicate his desires to her and would not or could not participate with counsel in his own defense. Snell alleges that Ellis invited the probate court to enter findings against her client and never withdrew her filing or filed a motion to withdraw.

Snell alleges he was detained at Garland until approximately 5 p.m. on December 27, 2018—fifteen days after meeting with Ellis. He also alleges that the court's file does not indicate that the probable cause hearing ever took place and that there are no further orders beyond the initial protective custody order.

Among the various failures by Ellis that Snell alleges in his pleading, Snell alleges Ellis did not advise the court that Snell had refused her appointed services

–4–

and that he desired to represent himself and, purporting to still represent him, essentially gave away all of his rights to challenge his continued involuntary commitment. He alleges Ellis's actions were false, misleading, unethical, criminal,[3] and in violation of her duties under section 574.004.[4]

After answering Snell's lawsuit and denying Snell's claims, Ellis filed a timely motion to dismiss under the TCPA. Ellis attached an affidavit and various records to her motion and sought dismissal of Snell's lawsuit on two grounds. First, Ellis argued that Snell's claims are based on or in response to two sets of information which, according to Ellis, constitute TCPA communications[5] and represent an exercise of her right to petition[6]—namely, the notification she signed and filed with the probate court regarding the parties' December 12, 2018 meeting ("notification"),[7] and alleged communications she had or failed to have on December

---

[3] Snell cited a health and safety code provision which states, "A person commits an offense if the person knowingly violates a provision of this subtitle." *See* TEX. HEALTH & SAFETY CODE § 571.020(b).

[4] *See* TEX. HEALTH & SAFETY CODE § 574.004(c) (providing, in part, "Regardless of an attorney's personal opinion, the attorney shall use all reasonable efforts within the bounds of law to advocate the proposed patient's right to avoid court-ordered mental health services if the proposed patient expresses a desire to avoid the services. If the proposed patient desires, the attorney shall advocate for the least restrictive treatment alternatives to court-ordered inpatient mental health services.")

[5] *See* TEX. CIV. PRAC. & REM. CODE § 27.001(1).

[6] Although Ellis's TCPA motion very briefly mentioned both the right of free speech and the right to petition, Ellis's reply brief in the trial court, Ellis's brief in this Court, and Snell's brief in this Court all focus on Ellis's alleged exercise of her right to petition under section 27.001(4)(A)(i). *See id.* § 27.001(4)(A)(i).

[7] The "notification" is a document entitled "Notification to Court of Patient's Response to Attorney" that was filed in probate court in Snell's proposed involuntary commitment proceeding. In the notification, Ellis filled in two blanks on the form, adding two handwritten markings and a signature above a signature block that identified her as Snell's attorney. Aside from her signature, her handwritten markings consisted only of the following: in the first blank, she wrote "12/12" to reflect the date in 2018 in which she met with

12, 2018, and December 18, 2018, during meetings with Snell.[8] Second, Ellis argued Snell could not produce clear and specific evidence establishing a prima facie case for each essential element of his claims. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c).

Snell filed a timely response to Ellis's motion that disputed both of Ellis's arguments. He attached as an exhibit an earlier-filed summary judgment motion and evidence that included an affidavit and various records. Ellis then filed a reply repeating her arguments and objecting to and asking that Snell's exhibit be stricken.[9]

The trial court timely heard and ruled on Ellis's motion. In its June 11, 2020 order, the trial court granted Ellis's motion, dismissed Snell's lawsuit, and ordered Snell to pay Ellis's counsel $4,900 in attorneys' fees. The order did not state the specific basis for its ruling, only that the court was "of the opinion that the [m]otion is well taken and should be granted."

Snell timely appealed and raises two issues, challenging both of the grounds Ellis included in her TCPA motion.

---

Snell, the proposed patient, and in the second blank, she inserted a slash (/) next to text stating that the proposed patient "could not or would not communicate with me so as to ascertain the patient's true desires."

[8] The existence of and content of the second set of alleged communications Ellis relies on as evidence of the exercise of her right to petition are murky at best. In one part of her appeal brief, Ellis describes them as oral communications during meetings with Snell on December 12, 2018, and December 18, 2018, but elsewhere in her TCPA motion and appeal brief, Ellis describes them as "omissions."

[9] The record does not indicate that the trial court ruled on Ellis's objection, and the parties present no issue in this appeal regarding Snell's exhibit.

As an anti-SLAPP statute,[10] the TCPA "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). The TCPA has a dual purpose: "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002.

As a matter of statutory construction, we review de novo a trial court's ruling on a TCPA motion to dismiss. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019); *Goldberg v. EMR (USA Holdings) Inc.*, 594 S.W.3d 818, 827 (Tex. App.—Dallas 2020, pet. denied) (op. on reh'g) (citing *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018)). In conducting that review, we consider, in the light most favorable to the nonmovant, the pleadings, evidence a court could consider under civil procedure rule 166a,[11] and any supporting and opposing affidavits stating the facts on which the liability or defense is based. *See* TEX. CIV. PRAC. & REM. CODE § 27.006(a); *Dyer v. Medoc Health Services, LLC*,

---

[10] The TCPA is an anti-SLAPP statute. "SLAPP" is an acronym for "Strategic Lawsuits Against Public Participation." *Krasnicki v. Tactical Entm't, LLC*, 583 S.W.3d 279, 282 (Tex. App.—Dallas 2019, pet. denied).

[11] *See* TEX. R. CIV. P. 166a.

573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied) (citing, in part, the prior version of § 27.006(a)) (other citation omitted).

We also ascertain and give effect to the legislature's intent as expressed in the language of the statute, considering the specific statutory language at issue and the TCPA as a whole, and we construe the statute's words "'according to their plain and common meaning, unless a contrary intention is apparent from the context or unless such a construction leads to absurd results.'" *Youngkin*, 546 S.W.3d at 680 (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)); *see Dyer*, 573 S.W.3d at 424–25.

We may not judicially amend the TCPA by adding words that are not contained in the language of the statute because the statute's text is the alpha and omega of the interpretive process. *In re Panchakarla*, 602 S.W.3d 536, 540–41 (Tex. 2020) (cleaned up).[12] Also, we will not "blindly accept attempts by [a TCPA movant] to characterize [a TCPA nonmovant's] claims as implicating protected expression. To the contrary, we view the pleadings in the light most favorable to [the nonmovant]; i.e., favoring the conclusion that [his] claims are not predicated on protected expression." *Sloat v. Rathbun*, 513 S.W.3d 500, 504 (Tex. App.—Austin 2015, pet. dism'd); *see also Damonte v. Hallmark Fin. Servs., Inc.*, No. 05-18-

---

[12] *See* Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143 (2017), available at https://lawrepository.ualr.edu/appellatepracticeprocess/vol18/iss2/3 (discussing and explaining the "cleaned up" parenthetical, a way to shorten unnecessarily lengthy citations).

00874-CV, 2019 WL 3059884, at *5 (Tex. App.—Dallas July 12, 2019, no pet.) (mem. op.).

At least five TCPA provisions are important for our analysis of the issues raised in this appeal. We include their pertinent statutory text below.

Section 27.001(1) defines "communication" as including "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." TEX. CIV. PRAC. & REM. CODE § 27.001(1).

Section 27.001(4)(A)(i) defines the exercise of the right to petition as including "a communication in or pertaining to . . . a judicial proceeding" as well as twelve other types of proceedings or meetings that are not pertinent here.[13]

Section 27.003(a) states:

> If a legal action is based on or is in response to *a party's* exercise of the right of free speech, right to petition, or right of association or arises from any act of *that party* in furtherance of *the party's* communication or conduct described by Section 27.010(b), *that party* may file a motion to dismiss the legal action. A party under this section does not include a government entity, agency, or an official or employee acting in an official capacity.

*Id.* § 27.003(a) (emphasis added).

Section 27.005(b) states:

> Except as provided by Subsection (c), on the motion of *a party* under Section 27.003, a court shall dismiss a legal action against the moving party if the *moving party* demonstrates that the legal action is based on or is in response to: (1) *the party's exercise* of (A) the right of free

---

[13] Ellis bases her alleged exercise of the right to petition only on section 27.001(4)(A)(i). *See* TEX. CIV. PRAC. & REM. CODE § 27.001(4)(A)(i).

speech; (B) the right to petition; or (C) the right of association; or (2) the act of a party described by Section 27.010(b).

*Id.* § 27.005(b) (emphasis added).

Section 27.005(c) states:

The court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question.

*Id.* § 27.005(c).

Our review of a TCPA ruling generally involves three steps. At step one, the TCPA movant has the burden to demonstrate the legal action is based on or is in response to the party's exercise of the right of association, right of free speech, or the right to petition. *See id.* § 27.005(b); *Creative Oil*, 591 S.W.3d at 132 (citing prior version of section 27.005(b)).

If the movant does so, the analysis proceeds to step two, where the burden of proof shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c); *Creative Oil*, 591 S.W.3d at 132 (citing prior version of section 27.005(c)).[14]

---

[14] A "prima face case" is "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Lipsky*, 460 S.W.3d at 590 (cleaned up). *Lipsky* notes that "clear" and "specific" in the TCPA context "have been interpreted respectively to mean, for the former, 'unambiguous,' 'sure,' or 'free from doubt' and, for the latter, 'explicit' or 'relating to a particular named thing.'" *Id.* (quoting *KTRK Television v. Robinson*, 409 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)). Thus, the term "clear and specific" pertains to the quality of evidence required to establish a prima facie case, and the term "prima facie case" pertains to the amount of evidence necessary for a plaintiff to carry his minimal factual burden to support a rational inference establishing each essential element of a claim. *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 882 (Tex. App.—Austin 2018, pet. denied).

Although not applicable to this appeal, if the nonmovant satisfies its burden at step two, the analysis proceeds to step three, where the burden of proof shifts back to the movant to establish an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law, resulting in dismissal if the movant does so. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(d); *Creative Oil*, 591 S.W.3d at 132 (citing prior version of section 27.005(d)).

## APPLICATION AND ANALYSIS

Snell presents two issues. He argues the trial court erred in granting Ellis's TCPA motion because (1) Ellis has not demonstrated that Snell's lawsuit is based on or in response to Ellis's exercise of her right to petition under section 27.005(b)(1)(B), and (2) Snell established by clear and specific evidence a prima facie case for each essential element of his claim under section 27.005(c). *See* TEX. CIV. PRAC. & REM. CODE §§ 27.005(b)(1)(B), 27.005(c). The parties agree on their respective burdens but disagree about whether or not those burdens have been met.

We begin with Snell's first issue. As already indicated, Ellis asserts she exercised her right to petition through two sets of information she maintains constitute TCPA communications and serve as the basis for Snell's lawsuit. In arguing her position, Ellis cites, as her primary authorities, *Youngkin*, 546 S.W.3d at 680, *Brown Sims, P.C. v. L.W. Matteson, Inc.*, 594 S.W.3d 573, 579 (Tex. App.—San Antonio 2019, no pet.), and *Mustafa v. Pennington*, No. 03-18-00081-CV, 2019 WL 1782993, at *3 (Tex. App.—Austin April 24, 2019, no pet.) (mem. op.). She

–11–

also attempts to distinguish two other cases, *Ray v. Fikes*, No. 02-19-00232-CV, 2019 WL 6606170, at *3 (Tex. App.—Fort Worth Dec. 5, 2019, pet. denied) (mem. op.) and *Krasnicki*, 583 S.W.3d at 284.

Snell argues that Ellis failed to satisfy her section 27.005(b) burden and maintains that his lawsuit is based on Ellis's failure to take any action to obtain his discharge for two full weeks after the law required it, not on the communications upon which Ellis relies.  To support his position, Snell cites, as his primary authority, *Ray*, 2019 WL 6606170, at *3.  He also attempts to distinguish *Mustafa*, 2019 WL 1782993, and, in oral argument, cited *White Nile Software, Inc. v. Carrington, Coleman, Sloman & Blumenthal, LLP*, No. 05-19-00780-CV, 2020 WL 5104966 (Tex. App.—Dallas Aug. 31, 2020, pet. denied) (mem. op.).

As previously noted, Snell's first issue raises the common question of whether a TCPA movant has satisfied her section 27.005(b) burden, but it also raises two other questions that are less common or novel:  (1) may a TCPA movant's "omission" qualify as a "communication" under section 27.001(1), and (2) when a principal brings claims against an agent, may the agent move for dismissal under the TCPA based on communications made on behalf of the principal?[15]

The first question, though not that common, is not new, and we have already answered, "No."  *See Krasnicki*, 583 S.W.3d at 283–84 (rejecting argument that

---

[15] In other words, for section 27.005(b) purposes, to whom are we to attribute a communication made by an agent on behalf of a principal, when the agent (as TCPA movant) seeks to dismiss the principal's claims against her?

communications, as defined by the TCPA, could include silence and stating, "the TCPA, as written, does not include the withholding of a statement or document as a 'communication'"); TEX. CIV. PRAC. & REM. CODE § 27.001(1) ("'Communication' includes the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic."). At least one of our sister courts has reached a similar conclusion. *Ray*, 2019 WL 6606170, at \*3 (TCPA definition "does not include a failure to communicate"). While two other sister courts reached a different conclusion in *Brown Sims*, 594 S.W.3d at 573 and *Mustafa*, 2019 WL 1782993, at \*3, we decline to follow those cases and instead follow *Krasnicki*.[16]  *See Krasnicki*, 583 S.W.3d at 283–84. Thus, the second set of alleged communications Ellis relies on—which Ellis often herself describes as "omissions"—do not demonstrate that she engaged in any TCPA-protected activity and do not satisfy her burden under section 27.005(b)(1)(B).

The more novel question, on the facts here, asks whether Ellis, as Snell's attorney (and thus his agent), may rely on the notification she filed on Snell's behalf for purposes of satisfying her burden under section 27.005(b)(1)(B). The plain text

---

[16] We follow our own precedent and may not overrule a prior panel decision of this Court, absent an intervening change in the law by the legislature, a higher court, or this Court sitting en banc. *Dyer*, 573 S.W.3d at 427; *MobileVision Imaging Services, L.L.C. v. LifeCare Hosp. of N. Texas, L.P.*, 260 S.W.3d 561, 566 (Tex. App.—Dallas 2008, no pet.). In addition to following our own precedent, we are also unpersuaded by Ellis's attempt to distinguish *Krasnicki* on the basis that it involved the rights of free speech and association, not the right to petition. We see no reason to draw such a distinction when none is drawn in section 27.001(1). *See* TEX. CIV. PRAC. & REM. CODE § 27.001(1).

–13–

of section 27.005(b),[17] long-standing rules regarding agency,[18] and our decisions in other contexts[19] suggest the answer is "no," but because the parties have not raised it, we do not decide that question here. Instead, for purposes of this appeal, we assume, but do not decide, that the notification Ellis relies on constituted an exercise of Ellis's right to petition under section 27.005(b)(1)(B). Even with this assumption,

[17] The plain text of section 27.005(b) requires us to examine both the nature of the communication or other TCPA-protected activity and the identity of the person making it, as evidenced by the definitions provided in sections 27.001(2)–(4) (defining the exercise of the rights of association and free speech and the right to petition) and the context and repeated use of the word "party" in sections 27.003(a) and 27.005(b). *See id*. §§ 27.001(2)–(4), 27.003(a), 27.005(b).

[18] In *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 693 (Tex. 1986), the court stated, in part: "The attorney-client relationship is an agency relationship. The attorney's acts and omissions within the scope of his or her employment are regarded as the client's acts; the attorney's negligence is attributed to the client." (citing *Texas Emp'rs Ins. Ass'n v. Wermske*, 349 S.W.2d 90, 93 (Tex. 1961)). In *Wermske*, the court stated, in part: "The general rule is that the relationship of attorney and client is one of agency. Under this rule, the omissions, as well as the commissions, of an attorney are to be regarded as the acts of the client whom he represents; and his neglect is equivalent to the neglect of the client himself." 349 S.W.2d at 93. Finally, in *Celanese Corp. v. Sahagun*, we noted, "[C]lients typically have, but do not necessarily exercise, control over the manner and means of their lawyer's performance. But that a client may defer to its lawyer's expertise in executing certain tasks does not render the lawyer any less the client's agent." No. 05-16-00868-CV, 2017 WL 3405186, at *4 (Tex. App.—Dallas Aug. 9, 2017, no pet.) (mem. op.) (citing *Gracey v. West*, 422 S.W.2d 913, 916 (Tex. 1968) (attorney-client relationship is also an agency relationship)). Although none of these cases involve the TCPA, we mention them simply to note that it seems inharmonious to attribute an attorney's actions to a client in several contexts but attribute the attorney's communications to the attorney, not the client, in the TCPA context. Put another way, whatever communications Ellis made while purportedly representing Snell's interests arguably are not *her* communications, but Snell's, in the factual context here. They implicate Snell's right to petition, not Ellis's.

[19] In other cases, when movants have failed to demonstrate their own exercise of, or have relied on another party's exercise of a TCPA-protected right, we have concluded the TCPA does not apply. *See Shields v. Shields*, No. 05-18-01539-CV, 2019 WL 4071997, at *4–5 (Tex. App.—Dallas Aug. 29, 2019, pet. denied) (mem. op.) (affirming denial of TCPA motion sought by two entities who failed to demonstrate any exercise of the right to petition); *Encore Enters., Inc. v. Shetty*, No. 05-18-00511-CV, 2019 WL 1894316, at *3 (Tex. App.—Dallas Apr. 29, 2019, pet. denied) (mem. op.) (concluding TCPA movant failed to satisfy its section 27.005(b) burden and stating, "the TCPA applies only if the plaintiff's lawsuit is based on, relates to, or is in response to the defendant's . . . exercise of one of the protected rights"). In *Encore Enterprises*, we made it clear that TCPA movants could not rely on communications made by the nonmovant for purposes of satisfying their section 27.005(b) burden. *See Encore Enters., Inc.*, 2019 WL 1894316, at *3. Although we do not decide the issue, in light of these authorities, we question whether a TCPA movant could rely on communications made for a nonmovant, for section 27.005(b) purposes, particularly when the movant is an agent for the principal at the time of the communication.

–14–

however, we agree with Snell that Ellis has not demonstrated that Snell's legal action is based on or in response to Ellis's notification.

Ellis argues she has done so because Snell's pleading discusses the notification and the proposed involuntary commitment proceeding, but we reject that argument, as a "nonmovant's reference to a judicial proceeding in a petition does not necessarily establish that a movant has engaged in any communication constituting an exercise of a right to petition under section 27.001(4) or that the nonmovant's claims are based on or in response to such communication." *Jordan v. JP Bent Tree, LP*, No. 05-19-01263-CV, 2020 WL 6128230, at *6 (Tex. App.—Dallas Oct. 19, 2020, pet. denied) (mem. op.). Additionally, while none of the parties' primary authorities on this issue are exactly the same as the circumstances before us, only *Youngkin* is binding, and it is distinguishable.

*Youngkin* addresses a lawyer's exercise of a right to petition in the context of a suit by a nonclient, and it provides us little guidance regarding the specific circumstances before us. In that case, Hines sued Youngkin, a lawyer, claiming that Youngkin knowingly participated in a fraudulent scheme to deprive Hines of certain real property. *Id.* at 679. Hines was not, and had not been, Youngkin's client. *See id.* ("This case involves tort claims brought by a nonclient against an attorney, based in part on statements the attorney made in open court on behalf of his clients.") Youngkin moved for TCPA dismissal, claiming Hines's claims stemmed from Youngkin's recitation of a rule 11 agreement in open court, which Youngkin argued

constituted an exercise of his right to petition. *Id.* at 680. Hines disputed this and claimed that the TCPA did not apply because Youngkin, an attorney speaking for a client in a courtroom, "was not exercising any personal First Amendment rights at all." *Id.* The court stated,

> Substituting the statutory definitions for the defined terms, we see that the TCPA applies to a legal action against a party that is based on, related to,[20] or in response to the party's making or submitting of a statement or document in or pertaining to a judicial proceeding. . . . By any common understanding of the words, he made a statement in a judicial proceeding.
>
> While those isolated provisions appear to resolve whether Youngkin may avail himself of the [TCPA], it would be contrary to our rules of interpretation to end our inquiry here. It is by now axiomatic that we must construe individual words and provisions in the context of the statute as a whole. The text of the TCPA itself explicitly acknowledges that the Act is intended to safeguard the constitutional rights of speech, petition, and association (without foreclosing the ability to bring meritorious lawsuits). TEX. CIV. PRAC. & REM. CODE § 27.002. We see no conflict between the plain meaning of the definition of the exercise of the right to petition and the statute's express purpose. Therefore, the TCPA's protections properly apply to Hines's claims against Youngkin.
>
> Hines's argument that Youngkin cannot invoke the TCPA because the First Amendment right to petition does not encompass Youngkin's in-court statements attempts to add a requirement to the statute that does not exist in its text. It does not follow from the fact that the TCPA professes to safeguard the exercise of certain First Amendment rights that it should only apply to constitutionally guaranteed activities.

*Id.* at 680–81 (cleaned up).

---

[20] *Youngkin* was decided in 2018, before the 2019 amendments went into effect. The "related to" phrase was included in the pertinent TCPA provisions when *Youngkin* was decided, *see Youngkin*, 546 S.W.3d at 380, but is not included in the current version. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a), 27.005(b).

The court then assumed without deciding that Hines met his burden under section 27.005(c) and held that Youngkin was entitled to TCPA dismissal because he established the affirmative defense of attorney immunity. *Id*. at 681. *Youngkin* did not involve or discuss the specific circumstances before us, and unlike Hines, Snell does not argue that Ellis's communications are beyond the TCPA's reach because they were not constitutionally protected. Because of these distinctions, we do not believe *Youngkin* controls or contradicts our conclusion here.

Additionally, of the cited authorities the parties primarily rely on for Snell's first issue, we believe Snell's cases are more analogous than those cited by Ellis, and we have already distinguished *Youngkin* and have declined to follow the others.[21] This case is not substantially different from *Ray*, in which our sister court concluded that a lawyer moving for TCPA dismissal failed to satisfy his section 27.005(b) burden where the nonmovant's claims alleged, among other things, various failures to act by the lawyer, which the court concluded did not implicate a communication. 2019 WL 6606170, at *3–4. This case is also not substantially different from *White Nile Software, Inc.*, in which we concluded that the TCPA did not apply where the movant failed to provide evidence of the contents of its communications and where

---

[21] In *Brown Sims, P.C.*, 594 S.W.3d at 579, the court concluded, under the prior version of the TCPA, that a legal malpractice claim "related to" to the movant's exercise of the right to petition); *Mustafa*, 2019 WL 1782993, at *3 (concluding, also under the prior version of the TCPA, that an alleged failure to communicate was in substance a criticism of communication and satisfied movant's initial TCPA burden).

the nonmovant's claims were based on an alleged failure to communicate. 2020 WL 5104966, at *6–8.

Based on the record before us, we conclude Ellis has failed to demonstrate that Snell's legal action is based on or in response to Ellis's exercise of her right to petition and that the trial court therefore erred in granting Ellis's TCPA motion. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b)(1)(B). We sustain Snell's first issue and need not address the second. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

We reverse the trial court's June 11, 2020 order and remand the case for additional proceedings consistent with this opinion.

200642f.p05

/Ken Molberg/
KEN MOLBERG
JUSTICE

–18–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JAMES R. SNELL, Appellant

No. 05-20-00642-CV     V.

JENNIFER ELLIS, Appellee

On Appeal from the 14th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-20-00840. Opinion delivered by Justice Molberg. Justices Reichek and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant JAMES R. SNELL recover his costs of this appeal from appellee JENNIFER ELLIS.

Judgment entered this 5th day of April, 2021.