**Opinion filed December 5, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00365-CV

_____

**BOREN DESCENDANTS AND ROYALTY OWNERS, Appellants**

**V.**

**FASKEN OIL AND RANCH, LTD.; FASKEN LAND AND MINERALS, LTD.; AND FASKEN ROYALTY INVESTMENTS, LTD., Appellees**

_____

**-- and --**

_____

## No. 11-23-00001-CV

_____

**THE MABEE RANCH ROYALTY PARTNERSHIP, L.P.; 315 MR, INC.; 93 JM, INC.; ROCK RIVER MINERALS, LP; PRIMITIVE PETROLEUM, INC.; AUSTEN CAMPBELL, CO-EXECUTOR OF THE ESTATE OF WILLIAM SCOTT CAMPBELL; JANET CAMPBELL, CO-EXECUTOR OF THE ESTATE OF WILLIAM SCOTT CAMPBELL; OSADO PROPERTIES, LTD.; AND**

**JUDITH GUIDERA, TRUSTEE OF THE MORRISON OIL & GAS TRUST, Appellants**

**V.**

**FASKEN OIL AND RANCH, LTD.; FASKEN LAND AND MINERALS, LTD.; AND FASKEN ROYALTY INVESTMENTS, LTD., Appellees**

On Appeal from the 118th District Court
Martin County, Texas
Trial Court Cause No. 7481

**O P I N I O N**

This is a consolidated permissive appeal from the grant of partial summary judgment in favor of Appellees, Fasken Oil and Ranch, Ltd., Fasken Land and Minerals, Ltd., and Fasken Royalty Investments, Ltd. (Fasken). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d) (West Supp. 2024). Appellants are organized into two groups: the Boren Descendants and Royalty Owners (Boren)[1] and the

---

[1]The "Boren" Appellants include Boren Minerals; A. Staude Family Limited Partnership; Charlotte Ann Staude; Joseph O. Staude, III; Belinda Fondon; B & B Mieth Family Limited Partnership No. III; B.W. Mieth, Jr.; Adam Gonzenbach; Deborah Ann Mieth Cavett; Rodney C. Cavett; Andrew Cavett; Hart Operating Fund; Janet Johnson Howle; John Marvin Ross, individually and as Trustee of the Naomi Ross Trust; John & Jennie Ross Revocable Family Trust 2006; John William Ross; Scott Gilbert Cody Ross; Daniel Thomas Ross; Miki Ann Mieth Martin; Norwood Louis Martin; Tabitha Dell Cavett Mayton; Dolores M. Nostrand; DoloresMarie LLC; Eddie Ray Johnson, individually and as Executor for the Estate of Calvin Ed Johnson, Jr.; Calvin Johnson Family Ltd., Frost Bank, Trustee for Goodwill Industries of Fort Worth Foundation, Inc. Revocable Trust; Jennifer Daher; RidgerockTexas, LLC; William David Swank; Swank Family Mineral Partnership LP; Richard A. Woodall, individually and as Trustee for Lewis A. Woodall Living Trust; Union Gospel Mission of Tarrant County; J.E. and L.E. Mabee Foundation; JC Perdue, Trustee for Berry LaFray Trust; and Harriet M. Cox.

Mabee Ranch Royalty Partnership, L.P., together with the remaining defendants in the underlying lawsuit (Mabee).[2]

After the trial court rendered a partial summary judgment against them, Mabee and Boren filed separate petitions for permissive appeal.[3] Fasken did not oppose their requests, and the trial court rendered an order granting permission for Mabee and Boren to each seek a permissive appeal. We then granted the petitions.[4]

At issue is the construction of a 1933 deed that reserved "an undivided one-fourth (1/4th) of the usual one eighth (1/8th) royalty" from a conveyance of real property, raising again the now-ubiquitous "double-fraction" deed construction issue. *See Hysaw v. Dawkins*, 483 S.W.3d 1 (Tex. 2016). The trial court rendered summary judgment in favor of Fasken, holding that the deed conveys a one-fourth floating interest to Fasken, rather than a fixed 1/32 interest. Additionally, the trial court rendered summary judgment against Mabee and Boren in connection with a variety of affirmative defenses raised by them, including estoppel, wavier, and ratification.

---

[2]The "Mabee" Appellants also include 315 MR, Inc.; 93 JM, Inc.; Rock River Minerals, LP; Primitive Petroleum, Inc.; Austen Campbell, Co-Executor of the Estate of William Scott Campbell; Janet Campbell, Co-Executor of the Estate of William Scott Campbell; Osado Properties, Ltd.; and Judith Guidera, Trustee of the Morrison Oil & Gas Trust.

[3]Although two separate appeals were filed, each of the appeals are part of the same trial court cause number and the controlling questions of law are the same. As such, we address both appeals in this opinion.

[4]Under Section 51.014(d) of the Civil Practice and Remedies Code, trial courts *may* permit parties to appeal from an interlocutory order that is not otherwise appealable if (1) the order "involves a controlling question of law as to which there is a substantial ground for difference of opinion," and (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Indus. Specialists, LLC v. Blanchard Ref. Co.*, No. 20-0174, 2022 WL 2082236, at *2 (Tex. June 10, 2022) (mem. op.) (quoting CIV. PRAC. & REM. § 51.014(d)); *see also* TEX. R. CIV. P. 168. And under subsection (f), appellate courts *may* accept the appeal if it is timely filed and explains why it is warranted under subsection (d). *Id.* A controlling question of law is one that (1) deeply affects the ongoing process of litigation, and (2) the resolution of which will considerably shorten the time, effort, and expense of fully litigating the case. *Gulf Coast Asphalt Co. v. Lloyd*, 457 S.W.3d 539, 544–45 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The trial court granted Appellants permission to file the interlocutory appeals and identified two controlling questions of law. In the exercise of our discretion, we elected to accept the appeals.

We affirm in part, reverse and render in part, and remand.

*Background*

In January 1933, Fasken's predecessor, Midland Farms Company, conveyed to J.E. Mabee, ninety sections of land in Andrews and Martin Counties, Texas. The relevant language of conveyance and reservation in the 1933 Deed is:

> Excepting, saving and reserving from this conveyance, however, unto and for the use and benefit of the grantor, Midland Farms Company, and its successors and assigns forever, an undivided one-fourth (1/4th) of the usual one-eighth (1/8th) royalty in and to all oil, gas, and other minerals in, to, and under or that may at any time hereafter be produced from said lands. It is understood that the interest herein excepted, saved and reserved is a royalty interest only and shall be nonparticipating as to bonuses and/or rentals which may be received or derived from the leasing of said lands for oil, gas and/or other minerals, and the grantee herein, his heirs and assigns, shall have authority to execute any and all of such leased [*sic*] from time to time which he or they may deem fit or proper, without the necessity of the grantor herein, its successors or assigns, joining in the execution of any such leases; all of such leases being subject, however, to the royalty reservation herein contained.

Mabee and Boren are among the successors-in-interest to the grantee, J.E. Mabee.

Between 2013 and 2020, Fasken signed a series of division orders in connection with leases that had been executed pursuant to the 1933 conveyance. Each division order allocated a fixed 1/32 interest to Fasken. Accordingly, the operators on leases that arise out of the 1933 conveyance, including Concho Resources, Inc. and Chevron USA, Inc., issued royalty payments to Fasken in amounts corresponding to a fixed 1/32 royalty interest. There is no evidence that any party to this litigation, other than Fasken, signed the division orders in question.

In 2019, Fasken filed an original petition alleging that it had been receiving royalties based on a fixed 1/32 interest when it should have been receiving a floating 1/4 royalty interest. In connection with these claims, Fasken asserted causes of action for money had and received, damages under Sections 91.402–.404 of the

4

Texas Natural Resources Code, and breach of contract. Fasken also sought to remove a cloud on its title and a declaratory judgment "that the Deeds reserved . . . a perpetual 'floating' 1/4th of royalties payable under applicable leases." In connection with its causes of action, Fasken sought damages based on the overpayment of revenues to Mabee and Boren that accrued during the four-year period preceding December 5, 2019, the date on which the lawsuit was filed.

On February 12, 2020, over two months after the lawsuit was filed, Fasken transmitted letters to Concho Resources and Chevron revoking the division orders to the extent that Fasken was being paid less than 1/4 of the royalty provided under the applicable lease(es).

Mabee and Boren answered and asserted an array of affirmative defenses. Several of the affirmative defenses are based on various theories of waiver and judicial estoppel. Most of these affirmative defenses sought to bar Fasken from claiming that it is entitled to anything other than a fixed 1/32 royalty, regardless of its contractual rights.

Fasken later filed a motion for partial summary judgment based on its construction of the 1933 deed. The trial court granted this motion and determined that the 1933 deed "reserve[d] a floating 1/4th royalty under applicable leases."

Fasken also filed a traditional and no-evidence motion for partial summary judgment on its affirmative defenses. The trial court granted these motions, effectively precluding Mabee and Boren from using such affirmative defenses to nullify Fasken's claim to a floating 1/4 royalty interest.

After the trial court granted Fasken's motions for summary judgment, Mabee and Boren requested permission from the trial court to file a permissive, interlocutory appeal. The trial court granted their requests and identified two controlling questions to be considered on appeal. *See* Civ. Prac. & Rem. § 51.014(d).

*Defining the Issues*

The parties have defined the issues that we must consider by referencing the two controlling questions of law that were identified by the trial court. However, in rendering our opinion, we are mindful that the matter before us is an interlocutory appeal from the trial court's orders on the parties' motions for partial summary judgment and motions for summary judgment. CIV. PRAC. & REM. § 51.014(d); *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 147 (Tex. 2022) (permitting "appeal from *an order* that is not otherwise appealable."). In a permissive appeal, it is necessary for the trial court to identify at least one such controlling question as a prerequisite to the appeal. *Elephant Ins.*, 644 S.W.3d at 147. However, "[w]hile 'involve[ment]' of a controlling legal issue is essential to securing a permissive appeal, the statute plainly provides that it is *the order* (or, as the case may be, the relevant portion of the order) that is on appeal." *Id.* (quoting CIV. PRAC. & REM. 51.014(d)). Thus, our task is not limited to answering the controlling questions. *Id.* (In an interlocutory appeal under Section 51.014(d), "the appeals court took a disconcertingly cramped view of its jurisdiction over the appeal and pointedly constrained its principal analysis" to the controlling question identified by the trial court.); *AccessDirect-A Preferred Provider Network, Inc. v. RCG E. Tex. LLP*, No. 12-24-00056-CV, 2024 WL 2337632, at *8 (Tex. App.—Tyler May 22, 2024, no pet.) (mem. op.) ("Section 51.014(d) does not contemplate using an interlocutory appeal as a mechanism to present certified questions."). Instead, we must determine whether the trial court erred when it rendered partial summary judgment in favor of Fasken in connection with the issues described in the orders. *See Elephant Ins.*, 644 S.W.3d at 147.

*Standard of Review for Summary Judgments*

"We review the trial court's grant of summary judgment de novo." *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Provident Life & Accident Ins.*

*Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)).  Summary judgment is proper when no genuine issues of material fact exist, and the movant is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c).  When the parties file competing summary judgment motions and the trial court grants one and denies the other, "we consider the summary judgment evidence presented by both sides, determine all questions presented, and if the trial court erred, render the judgment the trial court should have rendered."  *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015).  We similarly review a trial court's construction of a deed de novo.  *See Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743 (Tex. 2020).

*Issue One: Construction of the 1933 Deed*

An appellate court may only construe a deed as a matter of law if it is unambiguous.  *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 874 (Tex. 2018) (citing *J. Hiram Moore, Ltd. v. Greer*, 172 S.W.3d 609, 613 (Tex. 2005)).  If a deed is worded in such a way that it can be given a certain or definite legal meaning, then the deed is not ambiguous.  *Endeavor Energy Res., L.P. v. Discovery Operating, Inc.*, 554 S.W.3d 586, 601 (Tex. 2018).  Only when a text is ambiguous, are we permitted to consider evidence outside the four corners of the document to determine its meaning.  *Hysaw*, 483 S.W.3d at 8.  Here, the parties do not contend that the 1933 Deed is ambiguous, nor do we find it to be ambiguous.

This case involves a "double-fraction" in the conveyance language.  *See Hysaw*, 483 S.W.3d at 4.  The construction of double-fraction issues emerge when "an instrument expresses a royalty interest as the product of two fractions, such as '1/2 of the usual 1/8.'"  *Id.*  When confronted with the interpretation of a deed which includes a double-fraction in which the second stated fraction is 1/8, we now "*begin* [our analysis] with a presumption that the . . . use of such a double fraction was purposeful and that 1/8 reflects the *entire* mineral estate."  *Van Dyke v. Navigator Grp.*, 668 S.W.3d 353, 357, 364 (Tex. 2023) (mineral interest conveyance and

7

reservation); *see also Hysaw*, 483 S.W.3d at 4, 15–16 (conveyance by will of nonparticipating royalty interest).

In *Van Dyke*, the supreme court held that "antiquated mineral instruments containing 1/8 within a double fraction raise a rebuttable presumption that 1/8 was used as a term of art to refer to the *total* mineral estate, not simply one-eighth of it." *Thomson v. Hoffman*, 674 S.W.3d 927, 928 (Tex. 2023) (per curiam) (internal quotation marks omitted) (citing *Van Dyke*, 668 S.W.3d at 359); *see also Butler v. Horton*, 447 S.W.3d 514, 519 (Tex. App.—Eastland 2014, no pet.) ("[A] reference to one-half of the usual 1/8 royalty has been held to effectuate a reservation of a fraction of royalty."). In *Van Dyke*, because the record did not support a rebuttal of this presumption, the court held that the deed language "one-half of one-eighth" equated to one-half of the entire mineral estate. *Van Dyke*, 668 S.W.3d at 357.

The court in *Van Dyke* identified that the presumption could be rebutted by (1) express language, (2) distinct provisions that could not be harmonized if 1/8 is given the term-of-art usage, or (3) the repeated use of fractions *other* than 1/8 in ways that reflect that the arithmetical expression was meant to represent all fractions in the instrument. *Id.* at 364; *see also Thomson*, 674 S.W.3d at 928. Accordingly, the use of the term 1/8 in a double fraction scenario is regarded as a term of art *unless* the text or structure *of the instrument* rebuts the presumption, thus requiring that 1/8 be given its arithmetical meaning instead. *Van Dyke*, 668 S.W.3d at 364–65.[5]

---

[5]In connection with its argument relating to the meaning of the double-fraction clause in the 1933 deed, Mabee asserts that the trial court erred when it excluded reports from two of Mabee's experts from the summary judgment record. Each of these reports opined on the meaning of the phrase "one-fourth (1/4) of the usual one-eighth (1/8) royalty" in 1933 deeds. Because the assessment of a double-fraction under *Van Dyke* is based on the text of the deed, rather than the customs and practices of the time, the trial court could have properly determined that such affidavits were not germane to its inquiry on a question of law that arises out of the text in the deed. *See Van Dyke*, 668 S.W.3d at 364. Accordingly, we reject Mabee's argument that the trial court erred in excluding the reports from the summary judgment record. *See Greeheyco, Inc. v. Brown*, 565 S.W.3d 309, 316 (Tex. App.—Eastland 2018, no pet.) (evidentiary rulings are reviewed for an abuse of discretion).

The trial court, without the benefit of the *Van Dyke* opinion, correctly determined that the 1933 deed conveyed a floating 1/4 interest. The 1933 deed is not ambiguous, nor does it include any additional fractions aside from the referenced 1/8. Therefore, two of the three possible types of rebuttal evidence do not exist in this case. The third type of rebuttal evidence is a provision that could not be harmonized if 1/8 is given the term-of-art usage. *Id.*

Mabee and Boren argue that the inclusion of "the *usual* 1/8th" phrase in the deed reservation rebuts the presumption established in *Van Dyke*. Although the Texas Supreme Court has not specifically discussed whether "the *usual* 1/8th" phrase qualifies to rebut the *Van Dyke* presumption, we find the argument unpersuasive.[6] We have previously held that double-fraction language that describes "the usual 1/8 royalty" can, under appropriate circumstances, create a floating interest. *Butler*, 447 S.W.3d at 519.[7] We see no reason why such language cannot be similarly applied in this case, particularly in light of the supreme court's holding in *Van Dyke*, which created a presumption in favor of a floating interest in such deeds. 668 S.W.3d at 359.

Here, we have applied the *Van Dyke* presumption. In doing so, we express no opinion as to whether the mere use or absence of the language "the usual" in conjunction with "one-eighth (1/8th) royalty" is, by itself, determinative in deciding whether a reserved royalty is fixed or floating, in all circumstances.

Mabee and Boren also argue that, because the deed indicates that the reserved royalty "shall be nonparticpating as to bonuses and/or rentals," the term-of-art usage

---

[6]In *Hysaw*, the court discusses cases with conveyances using the phrase "the usual 1/8" but does not draw a distinction between them and the conveyance at issue that did not do so. *See Hysaw,* 483 S.W.3d at 4–5, 12.

[7]*Butler* stated: "As we have pointed out, the authorities in Texas hold that, *absent circumstances not present here*, this initial provision ['one-half of the usual 1/8 royalty'] reserves a fraction of royalty." 447 S.W.3d at 519 (emphasis added).

is not applicable. In support of this argument, Mabee and Boren assert that, when the 1933 deed at issue was created, the term "bonus" meant "something given in addition to what is ordinarily received by, or strictly due, the recipient." *Griffith v. Taylor*, 291 S.W.2d 673, 676 (Tex. 1956). Thus, they contend that, because any amount in excess of 1/8 would have constituted something "in addition to what is ordinarily received," such excess payments would constitute a bonus.

While the definition proffered by Mabee and Boren may have been correct in a general sense, the more narrow meaning of the term, particularly when it was contrasted with "royalty," described "a sum certain to be paid out of production." *Griffith*, 291 S.W.2d at 676. In other words, "royalty" was that regularly paid out as a "percentage of production under a lease" and which "continue[d] throughout the life of the lease," and "bonus" was a particular amount that was paid on a more limited basis. *Id.*; *see also Lane v. Elkins*, 441 S.W.2d 871, 874 (Tex. App.—Eastland 1969, writ ref'd n.r.e.) (contrasting "royalty" and "bonus" in a similar manner). As such, we conclude that the term "bonus," as used in the deed at issue, refers to any limited or one-time payments that might be due under the lease, as opposed to an ongoing "royalty," which would include the "usual 1/8th" or any other fraction that would become due as a percentage of production. *See BP Am. Prod. Co. v. Zaffirini,* 419 S.W.3d 485, 499 (Tex. App.—San Antonio 2013, pet. denied) ("bonus" was a cash lease bonus paid per acre; "the commonly understood meaning of bonus").

Following a de novo review, we agree with the trial court that Mabee and Boren have failed to rebut the presumption that "the usual one-eighth," refers to the entire interest owned. *See Van Dyke*, 668 S.W.3d at 359, 364. Therefore, we affirm that part of the trial court's partial summary judgment, which found that the 1933 deed reserved to Fasken a floating 1/4 royalty interest under any applicable leases.

*Issue Two: The Affirmative Defenses*

Fasken also moved for partial summary judgment on a number of affirmative defenses that were asserted by Mabee and Boren.[8] However, on permissive appeal, Mabee and Boren complain only about the trial court's rulings on waiver, ratification, and various forms of estoppel. Additionally, Mabee complains about the trial court's rulings on its affirmative defenses relating to the presumed grant doctrine and the statute of limitations.

The second controlling question identified by the trial court asks whether the affirmative defenses pled by Mabee and Boren prevent Fasken from claiming that its interest is anything other than a fixed 1/32 royalty interest. Fasken concedes that until the *Hysaw* decision was issued in 2016, it did not claim royalty payments based on a floating royalty. Fasken argues that *Hysaw*, and now *Van Dyke* (setting out that in an antiquated conveyance or reservation using double fractions that included 1/8, a rebuttable presumption exists that 1/8 was used as a term-of-art to refer to the total mineral estate owned), was such a "turbulent" and "sharp change of law" in oil and gas instrument construction that it permitted a party to advance a position that it did not advance earlier. We see nothing in the caselaw following *Van Dyke* that is inconsistent with Fasken's position; in fact, it is just the opposite. *See Thomson*, 674 S.W.3d at 928–29 (when rebuttal of the presumption is discussed, there is no mention of past conduct and acceptance of other royalty payments or other equitable affirmative defenses nor anything other than language within the deed itself that could refute the presumption and vary the original lease terms). Here, Appellants have not cited to any decision since *Van Dyke* in which equitable defenses have been

---

[8]In addition to the affirmative defenses that are the subject of this appeal, the trial court granted partial summary judgment on affirmative defenses based on the statute of frauds, unclean hands, laches, failure to perform conditions precedent, accord and satisfaction, res judicata, collateral estoppel, bona fide purchaser, circuity of action, superior title, voluntary payment, offset, and Mabee's status as a third-party-beneficiary.

used to either vary deed construction or alter the strict application of the deed's construction to future royalty payments. Further, we see no subsequent documents of conveyance in the record that alter the terms of the original deed.

A. *Estoppel*

Mabee and Boren assert various theories of estoppel as affirmative defenses. Estoppel arises where, by the fault of one party, another has been induced to change its position to its detriment. *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765 (Tex. App.—Texarkana 1992, writ denied); *Theriot v. Smith*, 263 S.W.2d 181, 183 (Tex. App.—Waco 1953, writ dism'd).

Critically, although estoppel may sometimes operate to prevent a party from asserting claims arising out of the party's conduct in the past, estoppel does not create new contractual rights, nor does it alter existing contractual rights. This principle is illustrated in *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726 (Tex. 1981), a case that is widely discussed in the parties' briefing.

In *Sun Oil*, the lessee (Sun Oil) changed its practice of accounting to its lessors for one-half of the working interest in the gas after it began obtaining production of larger volumes of gas in 1977. *Id.* at 730. There was also evidence that, in 1962, Sun Oil considered and rejected a course of action that would have suspended "the previous practice of crediting lessors with a share of working interest gas." *Id.* at 733. After the payments were suspended, the lessors sued Sun Oil, asserting multiple theories of recovery, including estoppel, waiver, and ratification. *Id.*

The supreme court held that estoppel "does not create a contract right that does not otherwise exist." *Id.* at 734. Thus, because the lease did not require payment of working interest gas, Sun Oil's past conduct in accounting for working interest gas could not be construed "as a promise to continue paying . . . a share of the future proceeds." *Id.* at 734. "In the face of an unambiguous lease, past conduct or promises do not give rise to estoppel." *Yzaguirre v. KCS Res., Inc.*, 47 S.W.3d

12

532, 541 (Tex. App.—Dallas 2000), *aff'd*, 53 S.W.3d 368 (Tex. 2001) (holding conduct of prior lessee who paid lessor greater royalties than they were entitled to under the terms of lease did not give rise to estoppel). In *Yzaguirre*, the "[l]essors alleged affirmative defenses of promissory estoppel, estoppel, quasi-estoppel, waiver, and laches." *Yzaguirre*, 47 S.W.3d at 541.[9]

Ordinarily, a party asserting estoppel is required to establish the elements of equitable estoppel.[10] However, in some situations, Texas courts will dispense with the need for showing all elements of formal estoppel, thus applying a type of estoppel that is known as quasi-estoppel. *See Rahlek, Ltd. v. Wells*, 587 S.W.3d 57, 73 (Tex. App.—Eastland 2019, pet. denied) ("Unlike equitable estoppel, quasi-estoppel does not require a showing of a false representation or detrimental reliance.") (quoting *Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied)); *Vessels*, 823 S.W.2d at 765 ("In quasi estoppel . . . no misrepresentation on one side, and no reliance on the other, is necessary to make out the defense."). "Quasi estoppel is an affirmative defense that 'precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken.'" *Rahlek*, 587 S.W.3d at 73 (quoting *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 778 (Tex. 2017)); *Vessels*, 823 S.W.2d at 765. "The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from

---

[9]Other courts, following *Yzaguirre*, have rejected considering past conduct or promises, on which affirmative defenses regularly rely, to influence the construction or application of an unambiguous deed or lease. *See EnerVest Operating, LLC v. Mayfield*, No. 04-21-00337-CV, 2022 WL 4492785, at *5 (Tex. App.—San Antonio Sept. 28, 2022, no pet.) (mem. op .); *Dresser-Rand Co. v. Bolick*, No. 14-12-00192-CV, 2013 WL 3770950, at *11 (Tex. App.—Houston [14th Dist.] Jul. 18, 2013, pet. denied) (mem. op.).

[10]For example, a defense of equitable estoppel requires: "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998).

which he accepted a benefit." *Rahlek*, 587 S.W.3d at 73; *Vessels*, 823 S.W.2d at 765–66.

Quasi-estoppel can take several forms, including claims for estoppel by contract and judicial estoppel, both of which are at issue in this case. *Hawn v. Hawn*, 574 S.W.2d 883, 886 (Tex. App.—Eastland 1978, writ ref'd n.r.e.) (estoppel by contract); *Basley v. Adoni Holdings, LLC*, 373 S.W.3d 577, 589 (Tex. App.—Texarkana 2012, no pet.) (judicial estoppel).

### 1. *Estoppel by Contract/Division Order Estoppel*

"Estoppel by deed or contract precludes parties to a valid instrument from denying its force and effect." *Masgas v. Anderson*, 310 S.W.3d 567, 571 (Tex. App.—Eastland 2010, pet. denied). Mabee argues that, because Fasken has either executed or ratified several documents which "acknowledge[]" that its interest was a fixed 1/32 interest, it is estopped by contract from asserting an inconsistent position. Those documents include a 2007 deed, a 1959 lease, and an extensive series of division orders. Mabee's briefing also points to several other occasions in which Fasken's representatives have described or acknowledged its interest as being 1/32. Similarly, Boren argues that "decades of conduct" on the part of Fasken binds it to a fixed 1/32 interest. However, there is no evidence that Mabee or Boren were parties to any of the documents that are included in the record, nor is there evidence that they were even aware of the existence of such documents at the time they were created.

Mabee and Boren are not strictly required to establish an element of justifiable reliance to recover under a theory of quasi-estoppel. *See Rahlek*, 587 S.W.3d at 73. However, in assessing their claim, we must still consider whether, under the circumstances, it would be "unconscionable" for Fasken to seek a recovery of overpayments made to Mabee and Boren. *See Rahlek*, 587 S.W.3d at 73; *Vessels*, 823 S.W.2d at 765–66. In that regard, we do not believe that Fasken's incorrect

14

descriptions and/or acknowledgements of its interest in documents that are otherwise unrelated to its relationship with Mabee and Boren somehow renders Fasken's claims as unconscionable. As such, we reject Mabee's and Boren's claims of estoppel, insofar as they rely on general principles of quasi-estoppel and/or contractual estoppel.

We are also unpersuaded that division order estoppel operates to bar Fasken's claims against Mabee and Boren. The record indicates that, prior to 2020, Fasken signed a series of division orders that instructed at least two separate operators to pay it a fixed 1/32 interest in the royalties at issue.

A division order is an agreement signed by a person who is entitled to payment from the sale of oil and gas proceeds. TEX. NAT. RES. CODE ANN. § 91.401(1), (3) (West 2011). It directs the payor to distribute the proceeds from the sale of oil, gas, and other hydrocarbons in a particular manner. *Id.* § 91.401(3). As such, "[d]ivision orders are 'the mechanism for payment to a payee of its share of oil and gas proceeds.'" *Perdido Properties LLC on Behalf of Bremer v. Devon Energy Prod. Co., L.P.*, 669 S.W.3d 535, 547 (Tex. App.—Eastland 2023, pet. denied) (quoting *Prize Energy Res., L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 560 (Tex. App.— San Antonio 2011, no pet.), *abrogated on other grounds by Nath v. Tex. Children's Hosp.*, 576 S.W.3d 707 (Tex. 2019)).

Division order estoppel is based on the *detrimental reliance of the operator* on the instructions that are set out in the order:

> In the typical case, purchasers and operators following division orders pay out the correct total of proceeds owed, but err in the distribution, overpaying some royalty owners and underpaying others. If underpaid royalty owners' suits against purchasers and operators were not estopped, purchasers and operators would pay the amount of the overpayment twice—once to the overpaid royalty owner under the division order and again to the underpaid royalty owner through his suit. They would have double liability for the amount of the

15

> overpayment. *Chicago Corp. v. Wall*, 293 S.W.2d 844 (Tex. 1956). Exposing purchasers and operators to double liability is unfair, because they have relied upon the division order's representations and have not personally benefited from the errors.

*Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 692 (Tex. 1986). Thus, the unique purpose of division order estoppel is to protect operators and payors from double liability. It does not shield payees from claims of overpayment, nor does it alter the terms of the contract(s) between the payees. *Id.* at 691 ("[D]ivision and transfer orders do not convey royalty interests; they do not rewrite or supplant leases or deeds."); *In re Unioil, Inc.*, 962 F.2d 988, 994 (10th Cir. 1992) (Relying in part on *Gavenda* and agreeing with the district court that "[a] Division Order is binding as between the listed distributees and the purchaser of the oil, but is not binding as between the distributees themselves."); *see also Amoco Prod. Co. v. First Baptist Church of Pyote*, 579 S.W.2d 280, 288 (Tex. App.—El Paso 1979), *writ ref'd n.r.e.*, 611 S.W.2d 610 (Tex. 1980) (Division order estoppel "was never intended to afford a Lessee the opportunity to amend the lease, relieve himself of lease obligations, and secure advantages over the lessor which he could not have asserted under the provisions of the lease.") (quoting Brown, THE LAW OF OIL AND GAS LEASES, (2nd ed. 1973) § 316.02).

Even though division order estoppel may be available to a payor, underpaid royalty owners may still assert a claim against the overpaid royalty owners for unjust enrichment. *See, e.g., Gavenda*, 705 S.W.2d at 692; *Perdido*, 669 S.W.3d at 548–49. Division order estoppel and contractual estoppel operate to protect appropriate parties from "unconscionable" actions on the part of the party signing the division order. However, a payee's execution of conveyances, division orders, and other documents that are not directly related to its relationship with other payees does not similarly operate to prevent the assertion of claims that such other payees have been overpaid pursuant to the relevant contractual agreements between the payees.

16

*See, e.g.*, *Gavenda*, 705 S.W.2d at 692; *Perdido*, 669 S.W.3d at 548–49. Accordingly, division order estoppel is inapplicable to the claims that have been asserted by Fasken against Mabee and Boren.

2. *Judicial Estoppel*

Generally, judicial estoppel is "a common law doctrine that prevents a party from [asserting] inconsistent positions in litigation." *George Fleming and Fleming & Assocs., L.L.P. v. Wilson*, 694 S.W.3d 186, 191 (Tex. 2024) (quoting *Perryman v. Spartan Tex. Six Cap. Partners, Ltd.*, 546 S.W.3d 110, 117 (Tex. 2018)); *Boucher v. Warrior Crane Serv., LLC*, 698 S.W.3d 344, 351 (Tex. App.— Eastland 2024, Rule 53.7(f) motion granted). It "precludes a party who successfully maintains a position in one proceeding from afterwards adopting a clearly inconsistent position in another proceeding to obtain an unfair advantage." *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009) (citing *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008)); *Boucher*, 698 S.W.3d at 351. "The doctrine is not strictly speaking estoppel, but rather is a rule of procedure based on justice and sound public policy." *Pleasant Glade Assembly of God*, 264 S.W.3d at 6 (citing *Long v. Knox*, 291 S.W.2d 292, 295 (Tex. 1956)).

Judicial estoppel is not intended "to punish inadvertent omissions or inconsistencies but rather to prevent parties from playing fast and loose with the judicial system for their own benefit." *Banta Oilfield Servs., Inc. v. Mewbourne Oil Co.*, 568 S.W.3d 692, 701 (Tex. App.—Texarkana 2018, pet. denied) (quoting *Ferguson*, 295 S.W.3d at 643); *Boucher*, 698 S.W.3d at 351–52. It "target[s] circumstances where a 'party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court

17

was misled.'" *George Fleming*, 694 S.W.3d at 191 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)); *Boucher*, 698 S.W.3d at 352.

For judicial estoppel to apply, a party must show that "(1) the opposing party made a sworn, inconsistent statement in a prior judicial proceeding; (2) the opposing party making the statement gained some advantage by it; (3) the statement was not made inadvertently or because of mistake, fraud, or duress; and (4) the statement was deliberate, clear, and unequivocal." *See Banta Oilfield Servs.*, 568 S.W.3d at 701 (quoting *Galley v. Apollo Associated Servs., Ltd.*, 177 S.W.3d 523, 528–29 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (footnote omitted)); *see also New Hampshire*, 532 U.S. at 750–53; *Swilley v. McCain*, 374 S.W.2d 871, 875–76 (Tex. 1964); *Long*, 291 S.W.2d at 295; *Boucher*, 698 S.W.3d at 352.

The record indicates that, in 2011, several taxation districts filed suit against the allegedly "unknown owners" of a 0.03125 royalty interest in two of the leases in question. Although Fasken later claimed that it was the owner of these interests, Fasken was not identified or sued at the time. After no one answered or appeared for the "unknown owners," the 118th District Court in Martin County rendered judgment against them for delinquent taxes.

Several months later, Fasken Royalty Investments, Ltd. filed a bill of review arguing that the judgment was "wrongfully obtained" because Fasken was the owner of these interests and could have been readily identified as the interest holder before judgment was rendered. The bill of review was verified under oath by the land manager for Fasken Oil and Ranch. In its bill of review, Fasken Royalty stated that it was "the owner of 0.03125 Non-Participating Royalty Interest"[11] in the leases in question, and it appears to be undisputed that this statement is a description of the interests that are the subject of the matter before us.

---

[11].03125 is the mathematical equivalent of 1/32.

Mabee argues that, as a result of Fasken Royalty's sworn bill of review, all of the Fasken entities[12] are judicially estopped from claiming that their interest is anything other than a 1/32 interest. However, as Fasken has noted, these statements were made at a time where our courts "generally [took] the straight-forward mathematical approach of multiplying double fractions to establish the fractional royalty interest." *Hysaw*, 483 S.W.3d at 12. Fasken notes that, only since that time has the supreme court embraced a less mechanical, case-specific view of these clauses. *See Hysaw*, 483 S.W.3d at 12–13; *Van Dyke*, 668 S.W.3d at 362.

Because the case law that Fasken now seeks to apply was unclear at the time, and even contradictory when Fasken filed its bill of review action in 2011, it cannot be said that Fasken has been acting with an intention to "play fast and loose" with judicial rules. *See Banta Oilfield Servs.*, 568 S.W.3d at 701. Likewise, we do not believe that evidence of Fasken Royalty's conduct in the 2011 litigation leaves the impression that Fasken has attempted to deceive the court, either then or now. *See George Fleming*, 694 S.W.3d at 193–94. Accordingly, we conclude that the summary judgment evidence was legally insufficient to support a claim for judicial estoppel.

B. *Waiver*

Waiver is an affirmative defense that can be asserted against a party who intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right. *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996); *Rahlek*, 587 S.W.3d at 70. "The elements of waiver include (1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right,

---

[12]Because we have determined that the judicial statement at issue does not estop Fasken Royalty Investments, Ltd., we need not address, and do not comment on, whether Fasken Oil and Ranch, Ltd. or Fasken Land and Minerals, Ltd. could also be estopped as a result of such a statement.

or intentional conduct inconsistent with the right." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008); *see also Rahlek*, 587 S.W.3d at 70. Waiver is largely an issue of intent. *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003); *Rahlek*, 587 S.W.3d at 70. A party may establish an implied waiver through a party's actions, but the surrounding facts and circumstances must clearly demonstrate an intent to waive the right. *Jernigan*, 111 S.W.3d at 156; *Rahlek*, 587 S.W.3d at 70. Mere silence or inaction cannot establish waiver unless the inaction shows an intent to relinquish the right. *Jernigan*, 111 S.W.3d at 157; *Rahlek*, 587 S.W.3d at 70. Waiver is ordinarily a question of fact. *Jernigan*, 111 S.W.3d at 156; *Rahlek*, 587 S.W.3d at 70. However, when the facts and circumstances are undisputed, the question is one of law. *Jernigan*, 111 S.W.3d at 156–57; *Rahlek*, 587 S.W.3d at 70.

Waiver permanently alters the parties' contractual obligations. *See Sun Oil*, 626 S.W.2d at 734 (Theories of ratification and waiver "require the conclusion that division orders permanently amend underlying lease provisions as a matter of law."). These effects are generally different from estoppel, which only applies for a limited period of time. *See, e.g.*, *id.* (Division order estoppel is "valid and binding until the division order is revoked, even though the division order modifies the express terms of the underlying lease."). As such, our supreme court has refused to extend the principals of division order estoppel to arguments that division orders constitute a waiver of contractual rights. *Id.*

Taken in the light most favorable to Mabee and Boren, the summary judgment evidence merely indicates that Fasken requested and then accepted payments of a 1/32 royalty interest during a period in which the law relating to the interpretation of double fractions in "antiquated deeds" was unsettled. *Hysaw*, 483 S.W.3d at 12. While Fasken may have possessed an understanding of its *potential* rights, Fasken could not have formed a clear understanding of its rights in connection with a double-fraction conveyance at the time, much less an intention to waive such rights.

20

Likewise, because the law was unsettled, Fasken's conduct could not have signaled a *clear* intent to waive its rights. *See Jernigan*, 111 S.W.3d at 156.

Because the summary judgment evidence does not raise a genuine issue of material fact as to whether Fasken intended to waive its rights, the trial court did not err when it granted a summary judgment on Mabee's and Boren's affirmative defense of waiver. *See Jernigan*, 111 S.W.3d at 156; *Rahlek*, 587 S.W.3d at 70.

C. *Ratification*

"Ratification is the adoption or confirmation by a person with knowledge of all material facts of a prior act which did not then legally bind him and which he had the right to repudiate." *BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 196 (Tex. 2021) (quoting *Wise v. Pena*, 552 S.W.2d 196, 199 (Tex. App.—Corpus Christi–Edinburg 1977, writ dism'd)). "Ratification may occur 'by express act or word,' or it 'may be inferred from a party's course of conduct.'" *Id.* at 196 (quoting *Motel Enters., Inc. v. Nobani*, 784 S.W.2d 545, 547 (Tex. App.—Houston [1st Dist.] 1990, no writ)).

Like waiver, ratification permanently alters the parties' contractual obligations. *See Sun Oil*, 626 S.W.2d at 734. As such, "[t]o avoid undue interference with a party's right to reject contract terms to which he does not agree, [our Supreme Court has] held that implied ratification should be found only if the party's actions '*clearly* evidenc[e] an intention to ratify.'" *BPX Operating*, 629 S.W.3d at 197 (quoting *Chrisman v. Electrastart of Hous., Inc.*, No. 14-02-00516-CV, 2003 WL 22996909, at *5 (Tex. App.—Houston [14th Dist.] Dec. 23, 2003, no pet.) (mem. op.) (emphasis added)).

In this case, the summary judgment evidence demonstrates that Fasken requested and then accepted payments of royalties at a time when its rights under the conveyance at issue were unclear. *Hysaw*, 483 S.W.3d at 12. This evidence is insufficient to demonstrate that Fasken formed an intention to be legally and

21

permanently bound to the 1/32 interest that it was then receiving. Accordingly, the trial court did not err when it granted summary judgment on the affirmative defense of ratification.

### D. *Presumed Grant*

In its briefing, Mabee complains about the trial court's refusal to grant its motion for summary judgment on the presumed-grant doctrine. It also complains that the trial court erred in granting Fasken's motion for summary judgment on the presumed-grant doctrine.

The presumed-grant doctrine is a common-law form of adverse possession. *Van Dyke*, 668 S.W.3d at 366. The trial court's order granting the parties' request for permissive appeal indicates that the summary judgment orders in question are appealed "with respect to the issues identified as controlling questions of law." The issue of the presumed-grant defense is not included within the list of issues that the trial court identified in its order permitting an interlocutory appeal. As such, we do not have jurisdiction to consider an interlocutory appeal of a summary judgment ruling on this particular affirmative defense. *Elephant Ins.*, 644 S.W.3d at 147 (noting that the order or "as the case may be, the relevant portion of the order" should be considered in an interlocutory appeal under Section 51.014(d)); *see also Borowski v. Ayers*, 432 S.W.3d 344, 348 (Tex. App.—Waco 2013, no pet.) (dismissing interlocutory appeal for want of jurisdiction where the appeal was not authorized under Section 51.014(d)).

### E. *Availability of Breach-of-Contract Claim/Limitations*

Mabee complains that the trial court erred in granting summary judgment on the issue of the statute of limitations. Mabee's central argument is that the trial court should have denied Fasken's motion for summary judgment on the issue of limitations because Fasken "has no contract claim" and must therefore plead a claim for unjust enrichment instead. Mabee further asserts that an unjust-enrichment claim

is governed by a two-year statute of limitations, rather than the four-year statute that governs a claim for breach of contract. *See, e.g.*, *Merry Homes, Inc. v. Luc Dao*, No. 14-16-00724-CV, 2017 WL 4159206, at *3 (Tex. App.—Houston [14th Dist.] Sept. 19, 2017, no pet.) (mem. op.) ("A claim for money had and received generally accrues when money is paid." (citing, *inter alia*, *City of Beaumont v. Moore*, 202 S.W.2d 448, 452 (Tex. 1947))). In other words, Mabee argues that Fasken's recovery in this case should be governed by the two-year statute of limitations for unjust enrichment, rather than a four-year statute of limitations for breach of contract.

### 1. *Our Authority to Consider the Issue*

Fasken argues that, as was the case with the presumed-grant defense, we do not have jurisdiction to consider the "limitations" issue. Fasken argues that, in the section of Mabee's brief that is complaining about limitations, Mabee "really argues . . . that Fasken's breach-of-contract claims should be governed by the limitations statute for unjust-enrichment claims, because that is the claim that Mabee thinks Fasken should have brought." Fasken then points out that, while Mabee sought a summary judgment on Fasken's breach-of-contract claim, it has "intentionally elected not to seek permission to appeal that ruling." Specifically, Fasken argues that the trial court's order authorizes us to consider only whether the four-year statute of limitations applies to bar Fasken's claim for breach of contract, not whether a claim for breach of contract is available to Fasken under these facts.

We conclude that we may consider Mabee's argument relating to "limitations" under the trial court's certification order. The trial court's certification order permits an appeal of the summary judgments "with respect to the issues identified as controlling questions." This description is not limited to causes of action and defenses, but to "issues" that have been raised on summary judgment. One of those "issues" is whether Fasken can claim that its interest is "anything other

23

than a fixed 1/32 . . . by Defendants' affirmative defense[] of . . . limitations." The question of how far back Fasken can seek damages "other than a fixed 1/32nd" is fairly included within this issue, and we believe that the question of which causes of action are appropriate under these facts, and which corresponding limitations period therefore applies, is fairly encompassed within the same "issue." As such, we proceed with an assessment of Mabee's limitations argument.

### 2. *Fasken's Breach-of-Contract Claim*

We have concluded that Fasken cannot assert a breach-of-contract claim under the circumstances of this case.

A cause of action for breach of contract requires, among other things, proof of a valid contract and proof that a party failed to perform or tender performance "as contractually required." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). As such, a claim can only be successfully maintained where there is evidence that the defendant agreed to and then failed to "do the thing for the nonperformance of which the action is brought." *Hull v. Freedman*, 383 S.W.2d 236, 238 (Tex. App.—Fort Worth 1964, writ ref'd n.r.e.) (quoting *Cowart v. Russell*, 144 S.W.2d 249, 250 (Tex. 1940)).

In this instance, there is no summary judgment evidence that any of the Mabee defendants entered into a contract to ensure that royalty payments are correctly distributed or to otherwise identify and then return overpayments that they receive from a payor or producer. Rather, the evidence merely demonstrates that they have accepted payments under the conveyance at issue. *See Hull*, 383 S.W.2d at 238 ("The lease . . . placed no duty upon the appellants" such that "[t]here was no failure of performance on their part.").

Following the lead of the supreme court, we have recently indicated that, even when an underpaid payee may not bring suit against a payor/operator as a result of division order estoppel, they may still bring a claim against the overpaid payees for

24

unjust enrichment. *See, e.g.*, *Gavenda*, 705 S.W.2d at 692; *Perdido*, 669 S.W.3d at 548; *see also Rahlek*, 587 S.W.3d at 63 n.2 ("[A]n action for unjust enrichment is the proper mechanism through which to seek" a remedy for recovery of past royalties.). This observation points toward a cause of action for unjust enrichment because payees under mineral conveyances do not ordinarily owe contractual duties relating to overpayments.

Because there is no evidence that J.E. Mabee or his successors assumed any contractual obligations related to the nonparticipating royalty interest or of a breach of any provision in a relevant contract, the trial court erred when it denied Mabee's motion for summary judgment on the issue of Fasken's cause of action for breach of contract. [13]

### 3. *Limitations and Unjust Enrichment*

Fasken's cause of action against Mabee for money had and received is a claim for unjust enrichment. *See Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 302 n.4 (Tex. 2015) ("In short, [money had and received] is an equitable doctrine applied to prevent unjust enrichment.") (quoting *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App. —Dallas 2012, no pet.)). Such claims are governed by the two-year statute of limitations. CIV. PRAC. & REM. § 16.003(a) (West 2017) ("[A] person must bring suit for . . . taking or detaining the personal property of another . . . not later than two years after the day the cause of action accrues."); *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007) (applying Section 16.003(a) to claims for unjust enrichment); *Rahlek*, 587 S.W.3d at 63 n.2 ("Unjust enrichment claims are governed by a two-year statute of limitations."). Furthermore, causes of action for money had and

---

[13]Because the Boren defendants have not raised the issue in their briefing, we do not comment on whether summary judgment was proper as to those parties on this same issue. However, upon remand, the trial court may wish to reconsider Boren's motion on this issue in light of our holding.

received accrue when the money is paid. *See City of Beaumont*, 202 S.W.2d at 452 ("The cause of action for money had and received came into existence at the time the purchase money was paid."); *Whatley v. Nat'l Bank of Commerce*, 555 S.W.2d 500, 506–07 (Tex. App.—Dallas 1977, no writ).

In its briefing, Mabee asserts that "Fasken's claims are barred by limitations," suggesting that Fasken cannot assert any viable claims based on limitations, including its claim for money had and received. In its pleadings, Fasken limits its claims to payments made to Mabee and Boren within the *four-year* period that preceded the filing of this lawsuit. As such, it appears that Fasken is seeking to recover damages for at least some overpayments that are outside the two-year limitations period.

The summary judgment record, however, is insufficient to support a claim that Fasken's cause of action for money had and received is barred in its entirety. To support such a claim, Mabee must show that none of the payments that Fasken is seeking to recover fall within the two-year limitations period. *See* TEX. R. CIV. P. 166a(c) (indicating that summary judgment is proper only if there is no genuine issue of material fact). Because Mabee has failed to demonstrate that all of the payments at issue fall outside the two-year limitations period, the trial court did not err when it denied Mabee's motion for summary judgment on the affirmative defense of limitations.

*Conclusion*

The trial court correctly applied the standards enunciated in *Hysaw* and *Van Dyke* when it granted partial summary judgment in favor of Fasken on the question of whether the deed at issue reserves a floating 1/4 royalty interest in favor of Fasken. The trial court also correctly granted partial summary judgment dismissing Mabee's and Boren's affirmative defenses of waiver, various forms of estoppel, and ratification. However, the trial court erred when it refused to grant partial summary

26

judgment in favor of Mabee and denied Fasken's cause of action for breach of contract.

*This Court's Ruling*

We reverse the judgment of the trial court insofar as it denies Mabee's request for summary judgment on Fasken's claim for breach of contract and we render a partial, take-nothing judgment on the same claim in favor of Mabee.[14]  Otherwise, we affirm the partial summary judgments rendered by the trial court on the issues that are the subject of this interlocutory appeal and remand this matter to the trial court for further proceedings consistent with this opinion.


W. BRUCE WILLIAMS
JUSTICE


December 5, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[14]While the remaining parties requested a summary judgment on the availability of a claim for breach of contract, they have not raised that issue in their appeal from the trial court's judgment.